## GAYES *v.* NEW YORK.

No. 405.   Argued May 2, 1947.—Decided June 23, 1947.

*Herbert Wechsler* argued the cause and filed a brief for petitioner.

*Harry L. Rosenthal* argued the cause and filed a brief for respondent.

MR. JUSTICE FRANKFURTER announced the judgment of the Court in an opinion in which THE CHIEF JUSTICE, MR. JUSTICE REED and MR. JUSTICE JACKSON join.

This is another case in which release is sought from confinement under a sentence by a State court following a plea of guilty, on a claim of a denial of due process of law through want of benefit of counsel.

The circumstances are these. On July 15, 1938, Gayes, then a lad of sixteen, was arraigned in the County Court of Monroe County, New York, upon an indictment charging burglary in the third degree and petty larceny. According to the record of conviction, he was asked, in accordance with the requirement of § 308 of the New York Code of Criminal Procedure, whether "he desired the aid of counsel," and he answered "No." [1] Imposition of sentence was postponed to July 28. When on that day

[1] Subsequent to the proceedings before the County Court of Monroe now under review, the minutes of the original proceedings against Gayes came to light. By stipulation of counsel these minutes are here. According to them, the precise question put to Gayes by the Assistant District Attorney in the presence of the Judge was, "Do you need a lawyer before you enter a plea of guilty or not guilty to this indictment?" To which Gayes replied, "No, sir." It may be inconclusively debated whether if Gayes was asked "if he desired the aid of counsel," as stated in the entry in the record of conviction, he was better informed of his rights, than if he was asked, "Do you need a lawyer?" In view of our disposition, the difference in significance becomes immaterial, and it is also immaterial whether, if there were a difference, we could consider, even in a case involving belated release from State detention, a matter not before the court whose judgment is here for review. But the differences that may exist between formal entry in the minutes of an acceptance of a plea and what was actually said contemporaneously lends force to the caution frequently expressed that every intendment must be made in support of the due observance of law in the rendering of judgments which are collaterally attacked, often after a considerable passage of time.

Gayes appeared for judgment, he was asked, again according to the requirements of New York law, whether "he had any legal cause to show why judgment should not be pronounced against him." New York Code of Criminal Procedure § 480. And "no sufficient cause appearing," the record continues, Gayes was committed to a New York State Vocational School to be dealt with there according to law. It appears from the facts before us that Gayes did not stay at this correctional institution as long as New York law would have authorized his detention. See New York Penal Law §§ 2184–a and 2189, in connection with § 407. For, on October 14, 1941, he pleaded guilty, in the County Court of Schenectady, New York, to a new charge of burglary in the third degree. The record of this latter proceeding does not indicate whether this time he was or was not represented by counsel. But no claim is made that this plea of guilty, or the sentence under it, has any infirmity for lack of legal assistance. Gayes' claim is that he was sentenced as a second offender by the inclusion of the improper sentence to the vocational school in 1938.

In accordance with New York procedure, Gayes, *pro se,* filed in the County Court of Monroe County, New York, an application to vacate the judgment rendered against him in that court on July 28, 1938. He claimed that in the proceedings which led to that judgment he had not been informed of his "Constitutional Rights of Assistance of Counsel," that he "could not have understood his rights to Counsel" and that "youths of the age of 16 years cannot Intelligently and Competently waive their rights." Since, according to this claim, the first sentence was void, he challenged the validity of the sentence in 1941 because the length of the second sentence was partly based upon the 1938 conviction.

Upon this record, the county court denied the motion without opinion. As New York law then stood, no re-

view could there be had of this determination. See *People v. Gersewitz,* 294 N. Y. 163, 61 N. E. 2d 427. This made the county court the highest court of the State of New York for purposes of our review. *Canizio* v. *New York,* 327 U. S. 82, 85. But see Chapter 706 of the New York Laws of 1947. We brought the case here, 329 U. S. 710, as one of a series, for further consideration of the circumstances under which the requirements of due process imply a duty to supply counsel to defendants in State prosecutions.

The guiding principles bearing on the general problem have been set forth in the opinion in *Foster* v. *Illinois,* just decided, *ante,* p. 134. Insofar as the facts of this case present a particular variant, they are controlled by our decision in *Canizio* v. *New York, supra.* We there held that whatever doubts may arise from the circumstances of a plea of guilty, if, before sentence is imposed, the opportunities required by the Constitution for meeting the legal implications of the plea are satisfied, the sentence must stand. And so, the questions that may be raised regarding the circumstances attending the imposition of Gayes' commitment to the vocational institution in 1938 are not now open. Gayes is complaining of his sentence following his plea of guilty in 1941.[2] What he wants is to be relieved of his imprisonment under that sentence. That sentence, to be sure, partly took into account his earlier sentence in 1938. But upon his subsequent sentence, as a second offender, in 1941, he had

---

[2] Gayes is detained under the 1941 sentence imposed by the County Court of Schenectady. A motion attacking that sentence would, under New York law, have to be made in that court. What he is asking is the invalidation of the prior sentence, underlying as it were the Schenectady sentence, presumably as a first step in getting relief from detention under the latter sentence. We are treating this proceeding, for our purposes, as one seeking, in effect, relief from the 1941 sentence without regard to formal distinctions which might otherwise be relevant.

full opportunity, so far as appears, to contest whatever infirmity he may have claimed in the earlier sentence when the fact of that sentence was included in the sentence which he is now serving.[3]   Since the process leading up to the second sentence is not challenged he cannot now, so far as the United States Constitution is concerned, by a flank attack, challenge the sentence of 1938.

*Judgment affirmed.*

MR. JUSTICE BURTON concurs in the result.

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY concur, dissenting.

A sixteen-year-old boy, indigent and alone, without relatives, friends, money or counsel to aid him and, according to the undenied allegations of the petition, with-

---

[3] According to the State, Gayes could have raised the claim he now makes against the 1938 conviction at the time he was sentenced in 1941, and from a denial of relief could have appealed to the higher courts.  This was not contradicted by the petitioner and is not brought into question in any opinion of the higher courts of New York.  It has been ruled in courts of very limited authority that a second offender cannot apply for resentence on a claim that there was a defect in the first sentence imposed by another court.  See *People* v. *Keller,* 37 N. Y. S. 2d 61 (Gen. Sess. N. Y. County), and *People* v. *Paterno,* 182 Misc. 491, 50 N. Y. S. 2d 713 (Chatauqua County Court).  Neither case, however, presented the claim that a violation of the United States Constitution vitiated the first sentence, and neither case raised the power of the court at the time of sentencing to consider such a claim.  It is certainly within the power of a duly advised defendant, before pleading guilty as a second offender, to raise the constitutional invalidity of the first sentence so as to secure opportunity appropriately to challenge such invalidity. Nothing that is herein decided precludes petitioner from raising a denial of his constitutional right upon a record that discloses circumstances other than those before us.  An order on such a motion is now reviewable by the New York Supreme Court and in certain instances by the New York Court of Appeals.

out knowledge of his constitutional rights,[1] pleaded guilty in 1938, under an indictment specifying two highly technical and distinct charges,[2] to the crime of burglary in the third degree.[3] The property he was charged with intending to steal[4] consisted of cigarettes of the value of seventy-five cents, two flashlights worth one dollar, and three dollars in currency. The sentence imposed on that plea has been served.[5] He is now confined as a second offender under sentence for another offense of similar character imposed in 1941,[6] when he was nineteen

---

[1] No answer was filed to the petition and the trial court determined the issues on the pleadings without hearing or appearance of petitioner in court, in person or by counsel. The allegation of petitioner that when asked whether he "desired counsel," he answered "no" in the belief that he would have to pay the lawyer's fee, and was not informed to the contrary is, of course, to be taken as true in the absence of denial and of contrary evidence which might have been tendered on a hearing.

[2] The first count charged that petitioner "broke and entered the building and garage of Francis Marlow . . . with intent to commit therein the crime of larceny"; the second count charged petit larceny of the property described in the text above.

[3] The sentence was to confinement in the New York State Vocational Institute, which when imposed for an unspecified term under New York Penal Law § 2184–a carried a maximum of ten years, which is the maximum for burglary in the third degree as a first offense. N. Y. Penal Law § 407 (3).

[4] Under the second count, for petit larceny or theft, being also presumably the property with respect to which it was charged in the first count that petitioner broke and entered with intent to commit larceny.

[5] Petitioner was held under the first sentence, see note 3, until December 14, 1943, when the New York Board of Parole directed that service of the sentence as second offender begin. The date of termination of the latter sentence, see note 6, was correspondingly postponed.

[6] The sentence of ten to twenty years as second offender is mandatory. N. Y. Penal Law § 1941. Had petitioner been sentenced in

and also without relatives, friends or counsel so far as appears.[7]

One part of the opinion announced in this case, as I understand, takes the view that because Gayes did not attack the 1938 sentence in 1941, when he was sentenced as a second offender, he is forever foreclosed from doing so on the facts and issues presented on this record, although as a second offender he is now suffering the consequences of the 1938 sentence.[8] For this conclusion reliance is placed upon no New York authorities; indeed, as I read the state cases, the Court's decision is made in the face of their rulings that the procedure petitioner has followed is the appropriate one for raising the issues he presents.[9]

I am unwilling to subscribe to such a doctrine of forfeitures concerning constitutional rights, which in the extreme circumstances of this case seems to me shocking.

---

1941 as a first rather than a second offender, the maximum sentence allowed would have been five to ten years, N. Y. Penal Law §§ 2189, 407, and he might have been sent to a reformatory rather than prison. N. Y. Penal Law § 2185.

[7] The "Record of Conviction" in the trial for the second offense, contained in the record here, discloses that petitioner, having been charged and arraigned, first pleaded not guilty, then withdrew that plea and entered one of guilty. It is then recited that petitioner appeared for judgment and, "having been asked by the clerk whether he had any legal cause to show why judgment should not be pronounced against him, and no legal cause having been shown" or appearing to the court, judgment and sentence were thereupon pronounced. There is no recital that petitioner was represented by counsel, was informed of his rights in any manner, or was admonished of the consequences of his plea.

[8] See notes 3, 5, 6 *supra.* See also note 12 *infra* and text.

[9] See note 11 *infra.*

152

Under all of the New York decisions which have passed upon the question,[10] the proper and apparently the necessary procedure, see *People* v. *Keller,* 37 N. Y. S. 2d 61, 62, for attacking a sentence as second offender, upon the ground that the former conviction was invalid, is first by motion in the court imposing the initial sentence to vacate it, after which if the motion is successful the sentence for the second offense may be attacked and vacated.[11]  In other words, the second offender, situated as is petitioner, must first overturn his first conviction in the court where it was obtained, before he can attack the second sentence founded in part upon that conviction.

This procedure in my opinion is a reasonable one within the power of a state to require, at least where both offenses have taken place within its jurisdiction.   And I know of no reason why this Court should disregard or override it. Much less is it within our province to invert the state procedure, if that is the effect of the dubious suggestion that petitioner's rights perhaps may be saved upon some other record "that discloses circumstances other than those

---

[10] In the absence of determination by a state's highest tribunal the rule announced and applied by other state courts is to be taken by us as determining questions of state law.   Cf. *West* v. *A. T. & T. Co.,* 311 U. S. 223.

[11] If the 1938 conviction is held void, under state law petitioner then may move to vacate the 1941 sentence in the court which imposed it, and for resentencing according to state law.   See *People ex rel. Sloane* v. *Lawes,* 255 N. Y. 112; *People ex rel. Carollo* v. *Brophy,* 294 N. Y. 540; *People* v. *Keller,* 37 N. Y. S. 2d 61.   And the proper forum for attacking the 1938 conviction, as a preliminary to attack on that of 1941, is the one where the former was obtained, by the motion to vacate which petitioner has employed.   *People* v. *Bernoff,* 61 N. Y. S. 2d 46; *People* v. *Foster,* 182 Misc. 73; *People* v. *Paterno,* 187 Misc. 56, with which compare *People* v. *Paterno,* 182 Misc. 491; cf. *People* v. *Gersewitz,* 294 N. Y. 163, 167; *People* v. *Keller, supra,* at 63.

before us," presumably if at all by motion before the court which imposed the 1941 sentence to vacate it.[12]

No state decisions are cited or, it would seem in view of the contrary authorities cited above,[13] can be cited to support such a view. Nor is it required by anything said or done in *Canizio* v. *New York,* 327 U. S. 82, if indeed such a matter could ever be within our function. The *Canizio* decision has no relevance to this case, either for prescribing the state procedure or for the constitutional issue. It held only that where a defendant had counsel at the time of his sentence and could then have moved to withdraw his prior plea of guilty, he was not prejudiced by the convicting court's previous failure to inform him of his right to counsel.

---

[12] The opinion announced in conjunction with the Court's judgment seems to suggest that the decisions establishing the state procedure followed in this case are not controlling for our disposition, on what basis I am unable to understand, see note 10 *supra,* unless upon the untenable one that state rulings upon criminal procedures and the proper forum for utilizing them are not binding for federal determinations to the same extent as are such rulings in civil matters.

Only upon some such basis is the dubious suggestion justified that petitioner should have raised the question of the validity of his first sentence at the time of his sentencing as a second offender and in that forum. Not only is this contrary to the established state procedure, see note 11, but it is expressly qualified by the further suggestion that petitioner's rights may possibly be saved "upon a record that discloses circumstances other than those before us," and it seems to be contradicted by the further statement that "the questions that may be raised regarding the circumstances attending the imposition of Gayes' commitment . . . in 1938 are not now open." It is pertinent to inquired whether Gayes is to have another chance, through a local procedure prescribed by this Court alone, or whether the constitutional questions now presented are foreclosed by his failure to follow a procedure not prescribed or, so far as appears, permitted by the state.

[13] See note 11.

· That case had nothing to do with the state procedure open to one convicted as a second offender for challenging his sentence on the ground that the first conviction was invalid for federal constitutional reasons. And the facts, on the merits, were very different from those presented here. Whereas, among other things, in that case the petitioner did have counsel before his sentence was imposed, here not only was Gayes denied counsel altogether in the first trial, but so far as the record discloses he had none in the trial for the second offense. I do not think the *Canizio* decision can be held to cover such a wholly different situation as this. It did not rule that, if a convicted person has never had counsel, the fact that in a later proceeding he conceivably might have had such aid if he had applied for it cures the denial, more particularly when so far as appears he was treated no better during his trial for the second offense than during the first, and when moreover his present attack is made as a preliminary one required by state law for showing the second sentence invalid.

In my judgment it is for the state, not this Court, to say whether the attack upon the first sentence as increasing the second shall be made on the flank or frontally, or perchance in either way. Indeed, under the law of New York, which is controlling on us, the so-called "flank" attack is apparently the only one now open to petitioner. In the face of so clear a violation of constitutional right as this case presents, we should neither foreclose that avenue nor substitute for it another dubiously available one of our own manufacture.

The judgment should be reversed.