THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH McALLISTER, Defendant.

County Court, Bronx County, February 23, 1949.

*Samuel J. Foley, District Attorney (John B. Lee* of counsel), for plaintiff.

*Louis Fleischer* for defendant.

JOSEPH, J. This is a motion for a writ of error *coram nobis.* The defendant, Joseph E. McAllister, alias John McAllister, alias Joseph Fitzgerald, alias John Keinan, was sentenced by this court, as a fourth offender, to State prison for a term of his natural life on January 15, 1920, at the age of twenty-three. This motion is predicated upon an attack against his third felony conviction and the sentence of this court on August 12, 1918, it being charged that the defendant was without counsel and was not advised of his right to such counsel on either the arraignment, plea or sentence.

It is undisputed that the defendant on October 22, 1913, at the age of seventeen, under the name of Joseph Fitzgerald, upon a plea of guilty to the crime of criminally receiving stolen property, was committed by a judge of the Court of General Sessions to Elmira Reformatory, there to be dealt with according to law.

The second felony conviction recorded against the defendant resulted from his conviction by the verdict of a jury, in this court, of the crime of criminally receiving stolen property. Judgment was imposed upon said defendant on May 14, 1915, and he was sentenced to State prison for a term of two years and six months.

The third felony conviction, now under attack, is based upon the proceedings had in this court under indictment No. 277/1918 charging burglary in the third degree and other counts wherein

this defendant on August 6, 1918, pleaded guilty to the crime of burglary in the third degree as a first offender. On August 12, 1918, the defendant was sentenced to State prison for a term of four years and six months. No motion was thereafter made or proceeding had to set aside the said conviction and the judgment rendered thereon by this defendant on the ground now asserted nor was an appeal taken from the aforesaid judgment.

On and about January 15, 1920, the defendant in this court, upon his plea of guilty to indictment No. 755/1919 charging a violation of section 1897 of the Penal Law as a fourth offender, was forthwith and immediately sentenced to State prison for a term of his natural life. Included in this sentence as a fourth offender was the said prior felony conviction of August 6, 1918.

The evidence adduced at the hearing in behalf of the defendant as to the plea of guilty to indictment No. 277/1918 and the judgment pronounced thereon is as follows: The defendant testified that on August 6, 1918, he was arraigned on the said indictment and pleaded guilty to the first count of the indictment that charged burglary, third degree. The defendant did not have an attorney. The clerk advised the defendant of the substance of the indictment. He was not advised by the court or the clerk of his right to counsel nor was he asked if he wished to have counsel assigned to him. The plea of guilty to burglary in the third degree, as a first offender, was accepted and sentence deferred to August 12, 1918.

On August 12, 1918, the defendant was not advised of his right to counsel, nor was counsel assigned to him. The defendant does not recall being asked if he had any legal cause to show why judgment should not be pronounced against him. The court thereupon sentenced the defendant to State prison as aforestated.

It appears that the stenographic minutes of all of the proceedings of this court are unavailable prior to 1925, due to the death of the official court stenographer. However, the calendar for August 6, 1918, was received in evidence as an exhibit. It appears that indictment No. 277/1918, People, etc., v. John McAllister, alias Joseph Fitzgerald, charging burglary, third degree, second offense, was on the calendar that day for pleading. The calendar as to that case bears the further entry "pleads guilty — 191 — to indictment as a first offense — sentence 8–12–18." The name of no counsel appears on the calendar for the defendant under that indictment No. 277. The calendar exhibit further shows that the defendant McAllister, alias Joseph

Fitzgerald, pleaded not guilty to indictment No. 258/1918. A codefendant, Edward Wallace, pleaded guilty to the crime of petit larceny, under indictment No. 259/1918 charging burglary third degree. The name of no counsel appears in either indictments No. 258 or No. 259. It does appear however that the name of a counsel is set forth on the calendar of August 6, 1918, under indictment No. 267 in a case on for pleading that day.

The calendar of the court of August 12, 1918, was also received in evidence as an exhibit. From such exhibit, it appears that the case of the People, etc., v. John McAllister, alias Joseph Fitzgerald, was on for sentence that day for burglary third degree, and the further notation appears, "Sentenced to State Prison for four years and six months." The name of no counsel appears. The codefendant of McAllister was also sentenced on that day, as appears from the said calendar under indictment No. 259, and no counsel's name appears for him. The calendar for August 12, 1918, further discloses that on that day all the other cases have the names of counsel set forth for the respective cases. Three cases on the calendar on that date for pleading set forth the names of counsel.

The indictment against the defendant shows the following: Calendar No. 277 — 1918 filed 30th day of July, 1918, counsel — blank. Pleads "Pleads Guilty 8–6–18 to Indictment first offense sent. 8–12–18."

A deputy clerk of the court testifying in behalf of the People, stated that he made the entries in the clerk's minute books and upon the indictments, from the daily calendars of the court. He further testified that it was the general practice at that time, as at the present time, to place the name of retained counsel on the calendar and on the face of the indictments, and where counsel was assigned to a defendant, to place the letter "a" alongside of the name.

In order to discredit the defendant McAllister's contention, the District Attorney called as a witness the chief clerk of the court who officiated in the court proceedings had against this defendant in August, 1918. Naturally, he had no independent recollection of what transpired in 1918. He testified to a general practice and compliance with sections 308 and 480 of the Code of Criminal Procedure. He testified that in the event of a guilty plea by defendants, no counsel was assigned. In other words, if an accused desired to plead guilty, after having been advised of his right to counsel, it was considered unnecessary to assign counsel to protect the interests of such accused. It is to be fairly

inferred from this testimony that guilty pleas were accepted by the court from defendants, without counsel, and without advice as to the rights of counsel.

The District Attorney relies upon the presumption of regularity in the absence of the stenographer's minutes which are no longer available. I find that the defendant has sustained the burden of overcoming the presumption of regularity which accompanies every judgment. The existing records of this court fully support the testimony and contention of the defendant that the arraignment, plea and sentence of the defendant was in violation of his constitutional and statutory rights.

I am not unmindful of the background of the defendant, who, in the pursuance of a career of crime, has spent thirty-two of the fifty-two years of his life in confinement. I would be derelict in my sworn duty, however, if I did not voice my protest against the procedure adopted, to expedite the court calendar, under which an accused, however hardened a criminal he may have been, was deprived of his liberty by an infringement of his statutory and constitutional right to legal assistance.

A plea of guilty cannot logically be taken as a waiver of the constitutional requirement that the defendant be informed of his right to counsel when he was not so informed on arraignment, although he has previously been convicted of crime, since the presumption that he knew his right is forbidden by law (*People ex rel. Moore* v. *Hunt,* 258 App. Div. 24). Every presumption is against a waiver where fundamental constitutional rights are involved (*Johnson* v. *Zerbst,* 304 U. S. 458; *Glasser* v. *United States,* 315 U. S. 60; *People* v. *Youlio,* 214 App. Div. 793).

I am constrained to conclude that the judgment of conviction for burglary in the third degree entered in the records of this court on August 12, 1918, was obtained from the defendant in violation of his constitutional and statutory rights to counsel. I find that the defendant was not informed or advised of his right to be represented by counsel nor did he waive such right (U. S. Const., 6th and 14th Amendts; N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 188, 308; *Johnson* v. *Zerbst, supra; Rice* v. *Olsen,* 324 U. S. 786; *Hawk* v. *Olsen,* 326 U. S. 271; *People ex rel. Moore* v. *Hunt, supra; People* v. *McLaughlin,* 291 N. Y. 480; *People ex rel. Asaro* v. *Morhous,* 268 App. Div. 1016).

" Due process " was a fundamental conception in the basic law of our democratic form of Government under which we were governed. I have used the past tense advisedly, albeit with considerable reluctance. Is " due process," now a phrase to be

used in terms of an abstract philosophy of law? Have the recent majority opinions of the United States Supreme Court, in such cases as *Gayes* v. *New York* (332 U. S. 145), *Foster* v. *Illinois* (332 U. S. 134) and *Canizio* v. *New York* (327 U. S. 82) created such a doubt in the minds of the Bench and Bar, that they cannot determine whether " due process " is a nebulous science or a deep-rooted precept of our legal jurisprudence?

The case of *Gayes* v. *New York* (332 U. S. 145, *supra*), a five-to-four decision in which one of the majority, Mr. Justice BURTON, concurred in the *result* only, is of grave consequence if controlling and applicable. The case could well be a landmark in circumscribing the writ of *coram nobis* and establishing the doctrine of estoppel to foreclose asserting a violation of due process. The majority opinion, in essence, narrows " due process " proceedings based upon a lack of counsel. It narrows the Constitution, legislative law and judicial determinations of our State courts. It is in direct contradiction to our expanding perspective evidenced by legislative fiat (L. 1947, ch. 706, amdg. Code Crim. Pro., §§ 517, 518, 519). The narrowing process, or " watering down process " (Mr. Justice BLACK in *Foster* v. *Illinois, supra,* p. 139), has been done in the face of, and in contradiction to New York law.

The *Gayes* majority opinion (*supra*) disregards the following New York decisions which hold that a criminal court has inherent power to vacate and set aside its own judgment procured by fraud or in violation of constitutional rights: *People* v. *Gersewitz* (294 N. Y. 163); *Matter of Hogan* v. *Supreme Court of State of N. Y.* (295 N. Y. 92); *Matter of Lyons* v. *Robinson* (293 N. Y. 191); *Matter of Morhous* v. *Supreme Court of State of N. Y.* (293 N. Y. 131); *Matter of Lyons* v. *Goldstein* (290 N. Y. 19); *People ex rel. Wiegand* v. *Brophy* (261 App. Div. 877, affd. 286 N. Y. 640); *Matter of Hogan* v. *Court of Gen. Sessions* (296 N. Y. 1).

In the case of *People ex rel. Marlowe* v. *Martin* (192 Misc. 192, 196) it was said, " The effect of the decision [*Gayes* case, *supra*], of the Supreme Court may not be clear. The opinion of Mr. Justice FRANKFURTER seems to adopt reasoning contrary to well-established rulings of the Court of Appeals of the State of New York. It states in effect that since Gayes admitted in the Schenectady County Court that he was the same person convicted in the Monroe County Court as charged by the information, and since he did not there challenge the former conviction, he was thereafter precluded from raising the question."

In *Matter of Bojinoff* v. *People of New York* (274 App. Div. 838, 839), Mr. Justice LARKIN contends, "Gayes presented no question requiring the Supreme Court of the United States to determine whether his rights under the Federal Constitution had been violated. The Constitution of the State of New York has always contained a due process clause."

The problems in the *Gayes* case (*supra*) where the defendant refused counsel on both the plea and the sentence, the *Canizio* case (*supra*) where counsel appeared on the sentence, the *Foster* case (*supra*) where the Illinois State statute made no requirement for the assignment of counsel and the instant *McAllister* case where the right to counsel was not waived, where no counsel appeared and where the defendant was not informed of his rights, revolve in different orbits.

The courts of the State of New York have promulgated well-defined principles regarding *coram nobis* and the procedure to be used in such proceeding. The New York Legislature by its statutes has declared the public policy constituting due process (Code Crim. Pro., §§ 8, 188, 308, 480). It is for the courts of this State to construe these statutory provisions.

The United States Supreme Court has very emphatically laid down the rule that the Federal courts will follow the law of the State whether the law of the State be declared by its Legislature in a statute or by its highest court in a decision. The Supreme Court has said it is not a matter of Federal concern (*Erie R. R. Co.* v. *Tompkins,* 304 U. S., 64, 78; *West* v. *American Tel. & Tel. Co.,* 311 U. S. 223, 237). It appears the *Gayes* case (*supra*) is not in keeping with the rule of law enunciated in *Erie R. R. Co.* v. *Tompkins* (*supra*).

The motion is accordingly granted and the writ sustained. Settle order on notice.