Frank J. Parker, U. S. Atty., Brooklyn, N. Y., by Phillip J. Hirsch, Asst. U. S. Atty., St. George, N. Y., for the United States.

Hyman Goldstein, New York City, for petitioner.

## UNITED STATES v. KLINE.

### Crim. No. 36758.

United States District Court,
E. D. New York.

June 19, 1951.

GALSTON, District Judge.

The petitioner by motion seeks an order to vacate a judgment of conviction entered in this court on June 30, 1936. He had been indicted on June 25, 1936 for violations of sections 263 and 265 of Title 18, U.S.C.A., now 18 U.S.C.A. § 472. Upon arraignment he pleaded guilty to all four counts, and on June 30, 1936 he was sentenced to a term of eighteen months imprisonment and to pay a fine of one dollar on each count, the prison sentences to run concurrently. The sentence was served and the defendant discharged from custody.

In May 1948, he was sentenced by the County Court of Kings County for a violation of section 1897 of the Penal Law of the State of New York, McK.Consol. Laws, c. 40, relating to the carrying and use of dangerous weapons. He was treated as a second felony offender, and a sentence of

eight to fourteen years was imposed upon him. The defendant is now serving under that sentence. His present application seeks to have the 1936 judgment of conviction vacated so that he may be regarded as a first felony offender, and as such, under the laws of the State of New York, subject to serve a sentence of but from three and a half to seven years.

The defendant's petition alleges that at the time he pleaded guilty he was ignorant of legal procedure, and that he was led to expect a short term of probation, and that he was unaware of the seriousness of his crime.

There were no minutes of the court proceedings recorded on June 26, 1936, when the petitioner pleaded guilty, for at that time there was no official stenographer, and in consequence no stenographic record was kept of pleas of guilty. The only recorded entries of the plea and sentence appear to be the court clerk's endorsement on the reverse side of the indictment and the clerk's judgment docket entries, which merely reflected the entry of the guilty plea by the defendant, and the sentence imposed by the court on the dates when they respectively occurred.

At the hearing of the motion the petitioner was permitted to amend his petition to add an allegation of not guilty. The court assigned counsel to the petitioner, and hearings were held on April 19th and 20th, 1951, at which testimony was taken on the issues involved. It is the contention of the petitioner that at the time he entered his plea of guilty he was not advised "of his rights, nor was the petitioner represented by counsel in direct violation of the mandates laid down by the Sixth (6th) and Fourteenth (14th) Amendments of the United States Constitution".

John J. Fitzgerald, a special agent of the United States Secret Service, testified that he took part in the investigation that resulted in the arrest of the defendant, on June 12, 1936, for unlawful possession and attempting to pass a counterfeit ten dollar bill. At the same time two young boys, one fourteen years of age and the other thirteen years of age, were also apprehended. The petitioner, at that time, was twenty-two years of age.

Fitzgerald advised the petitioner that he was entitled to counsel, and he was warned of his constitutional rights, but nevertheless he made and signed a statement wherein he said that the ten dollar bill was counterfeit; that he was to receive two dollars of the proceeds after passing the bill; that he attempted to pass it at several retail stores; and that after failing to pass it he told one of the boys to go to several other stores where they also made unsuccessful attempts to pass the bill.

Fitzgerald was present when the petitioner was arraigned before United States Commissioner Visel, on June 12, 1936.

In his affidavit, dated December 7, 1950, offered in evidence, Commissioner Visel stated that he had no independent recollection of the case, but that he knew all defendants arraigned before him were informed of the nature of the charge, of their right to consult with friends and relatives, and the right to counsel, and the right to an adjournment for the purpose of obtaining and consulting counsel. Fitzgerald, in his affidavit, which is an exhibit in evidence, says that in his attendance at hearings before the commissioners of this court, including Visel, after reading the charge to the prisoner, the Commissioner said: "You are entitled to consult with friends and relatives; you are entitled to counsel."

At his arraignment before the commissioner, apparently after having been fully advised of his rights, including the right to counsel, on June 12, 1936, he pleaded guilty and was held in bail of $3,000.

As has been indicated, thereafter he was indicted and pleaded guilty to all counts of the indictment. Between the date of his pleading to the indictment and the date of sentence, the Probation Department of this court conducted an investigation and furnished the court with a pre-sentence report, the details of which are set forth in the letter attached to the affidavit of Phillip J. Hirsch, an Assistant United States Attorney, sworn to January 30, 1951.

The criminal record of the defendant as reflected in Police Department reports con-

vincingly indicates that the petitioner was familiar with some aspects of criminal proceedings prior to his conviction in this case. The Police Department records show the following:

"10–9–31 as Francis Kline, Brooklyn. Burglary (Final charge pet. larc.) On 12–1–31, Sen. susp., 3 yrs. probation, Judge Martin, Co. Ct. Off. Powers, 72nd Sq."

"1934—as Francis Kline, Brooklyn, Conspiracy to rob. Discharged."

"1–28–35 as Francis Kline, Brooklyn, Att. robbery. On 2–5–35, Discharged, Magt. Rudich, 9th Ct. Off. Hendry, Murphy & Kane, 72nd Sq."

In addition to the admitted arrests and conviction in 1931 and 1935, the Police Department record indicates the following: "1928 as Francis Kline, Brooklyn. Truancy 7 mos. N. Y. Parental School."

As Agent Fitzgerald recites, there is an endorsement appearing on the photostatic copy of the certified complaint in connection with the offense committed October 9, 1931. The endorsement indicates that the petitioner was represented by an attorney.

In 1938 the petitioner was charged with burglary and unlawful entry in the County Court of King's County, and notices of appearance were entered in his behalf on June 17, 1938 and July 18, 1938.

In 1944 he was sentenced to sixty days in the workhouse for disorderly conduct, and the endorsement of the complaint in the magistrate's handwriting indicates that the petitioner was advised as to his right to counsel. In other Police Court records for offenses committed on January 1, 1947 and November 11, 1947, he again was represented by counsel.

It would seem that the conclusion is irresistible that the petitioner was well acquainted with his legal rights long before making this present motion. As was said in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

At the hearing, the petitioner admitted that he had never made any request to withdraw his plea of guilty, nor to enter a plea of not guilty, as alleged in his petition. He alleges in his petition that on June 1, 1936 he sent a letter "to the presiding Judge, the Honorable J. Galston, relating therein that through his (the petitioner's) ignorance of the law he had plead guilty, and respectfully asked permission to withdraw it. There was no reply to this missle (sic)". It is to be noted though that in the letter of June 1, 1936 there is nothing stated therein to to the effect that the petitioner had entered a plea of guilty in ignorance of the law. Indeed it is entirely clear that the sole purpose of the letter was to endeavor to have the court reduce the sentence, and not to vacate it. The letter in part reads: "* * * I pled guilty to possession, but Your Honor may honestly believe that I never passed or trafficed in any way in counterfeit money. I did try to pass this counterfeit bill, which I had in my possession only two hours, and am guilty of that offense, as I pleaded, and am ready to pay the penalty for my crime but do beleive (sic), as I feel sure Your Honor will also, after reviewing this case, that the sentence received greatly exceeds the crime as committed."

The proof at the hearings failed to disclose any attempt on the part of the Government to compromise the petitioner's rights, either by threats or by promises.

The examination of the petitioner discloses that his credibility is to be doubted. For example, he said that he did not know that the ten dollar bill was counterfeit at the time he attempted to pass it on the two occasions recited in the indictment. He testified that the first knowledge he had that it was counterfeit was when he was so informed by Agent Fitzgerald, after he had been arrested. This is wholly inconsistent with the petitioner's signed statement taken on the same day of his arrest. Therein he said:

"At Eddie's Market I was told the bill was no good. The proprietor took out another ten dollar bill and compared it with the bill I had given him and said it was counterfeit.

"I also told both the boys (the boys arrested with the petitioner) that the bill didn't look good."

The petitioner's alleged ignorance that the bill was counterfeit is controverted by the statement of Edward Greenhaus, the proprietor of "Eddie's Market", that he told the petitioner, Kline, that the bill was counterfeit.

The petitioner is contradicted also by Fitzgerald, who testified that Maresca, one of the boys arrested with Kline, told him in the presence and hearing of Kline, that Maresca had obtained the ten dollar bill knowing it was counterfeit from his father's cash register; and that Maresca had told Kline to that effect, and asked Kline to try to have it cashed, and that Kline had agreed to do so.

Again, as further proof of Kline's knowledge and guilt, it appeared at that same interview of Fitzgerald with Maresca at which Kline was present, that Maresca told Fitzgerald of a test made by Kline which according to Kline would show whether the bill was counterfeit. The test was made before Kline attempted to pass the bill. Kline did not attempt to explain or deny this statement at the hearing.

At the hearing he did testify that he did not know, until in the trial in the county court of King's County in 1948 he was informed by the judge that he could have counsel assigned, that an accused had the right to have counsel assigned by the court. However, he did admit at the hearing that at the time he appeared before this court in 1936 he did not state to the court that he was financially unable to obtain counsel, and that he had made no attempt to engage a lawyer. Nor is there any evidence presented that he made any attempt to reach members of his family or his friends for advice or assistance.

The petitioner's testimony was not trustworthy. The contradictory nature of the various statements he made in his petition, in other documents, and in testifying at the hearing, raises doubts as to his credibility. The evidence presented at the hearing justified the conclusion that the petitioner made his plea of guilty, not through any ignorance of possible defenses upon which he was entitled to be heard through counsel, but because of a feeling on his part that counsel would be of no avail, there being no doubt in his own mind of his guilt. As indicated, the petitioner apparently felt that by pleading guilty a less severe penalty would be prescribed than was imposed.

The burden of proving that the sentence which is being attacked is illegal and void is, of course, on the petitioner. See Johnson v. Zerbst, supra, 304 U.S. at page 468, 58 S.Ct. 1024, 82 L.Ed. 1461. He has failed to meet this burden.

Though the foregoing has been a discussion of the petitioner's case on the merits, it may well be doubted whether this court has jurisdiction to entertain the petition since the defendant is not in custody under the sentence imposed, and has indeed served the sentence which he is attacking, Lopez v. United States, 9 Cir., 186 F.2d 707. Also the Supreme Court has held that the writ of habeas corpus may not be used in the federal courts as a means of securing the judicial decision of a question which, even if determined in the prisoner's favor, could not result in his immediate release from custody, McNally v. Hill, Warden, 293 U.S. 131, 135, 136, 55 S.Ct. 24, 79 L.Ed. 238.

See also Gayes v. State of New York, 332 U.S. 145, 148, 67 S.Ct. 1711, 1713, 91 L.Ed. 1962, affirming the action of the state court. The state court had denied an application to vacate a judgment there rendered on the ground, alleged by the defendant, that he had been denied his right to counsel. Mr. Justice Frankfurter wrote: "But upon his subsequent sentence, as a second offender, in 1941, he had full opportunity, so far as appears, to contest whatever infirmity he may have claimed in the earlier sentence when the fact of that sentence was included in the sentence which he is now serving. Since the process leading up to the second sentence is not challenged he cannot now, so far as the United States Constitution is concerned, by a flank attack, challenge the sentence of 1938."

The motion is denied.

Findings of fact and conclusions of law in conformity with the foregoing opinion will be filed concurrently with this opinion.