**UNITED STATES ex rel. James Jessie BROWN, Petitioner,**

v.

**Hon. Robert E. MURPHY, Warden, New York State Prison, Auburn, New York, Respondent.**

Civ. No. 9232.

United States District Court
N. D. New York.

Jan. 8, 1963.

J. Michael Hippick, Albany, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Albany, N. Y., Raymond B. Madden, Asst. Atty. Gen., of counsel, for respondent.

JAMES T. FOLEY, District Judge.

This petitioner filed for a writ of habeas corpus directly in this Court under the important ruling of the Court of Appeals, Second Circuit, in United States ex rel. LaNear v. LaVallee, 306 F.2d 417 before the mandate of that Court was filed and final in this District Court. Such premature action is again indication that the state prisoners of New York—and I have observed this fact from continuous contact over a period of years with their problems—have free access to or gain knowledge quickly in some manner of current judicial rulings that may affect their own destiny. The LaNear ruling of the federal Appellate Court of this Circuit, inasmuch as it was not challenged further by the State of New York, is now binding on this Court and I must follow its reasoning, guidance and policy literally and willingly. It is evident to me serious, practical complications now confront New York by a drastic change of policy in this Circuit from past approach in federal habeas corpus procedures relating to exhaustion of available state remedies under the federal statute. (28 U.S.C.A. § 2254).

It would seem beneficial, in my judgment, for the Attorney General of New York to make certain the decision with important consequence to the state administration of criminal justice is brought to the attention of the Judicial Conference of New York, the Commission of New York studying possible revisions in its penal laws and procedures, and the District Attorneys' Association. In my judgment, an unhealthy situation exists that affects federal-state comity in the criminal field that possibly could be prevented or diminished by clarifying legislation or extension of judicial review of multiple offender convictions in New York. Cautious and careful use by the District Attorneys of New York in the selection of previous convictions under the multiple offender law that may be constitutionally questionable would lessen the probability of immediate federal intrusion and review.

I have no idea of the statistical number of habitual-offender New York convictions that may be under this cloud of direct federal review, but it would seem there must be a considerable number. The constitutionality of the multiple of-

fender laws of New York, long-established in its criminal system of justice, has been upheld by the highest court of New York. (Sections 1941–1943, Penal Law, New York; People v. Gowasky, 244 N.Y. 451, 458–460, 155 N.E. 737, 58 A. L.R. 9; People ex rel. Fernandez v. Kaiser, Warden, 256 N.Y. 581, 177 N.E. 149; cert. den. 284 U.S. 631, 52 S.Ct. 16, 76 L.Ed. 537). It has been held flatly by the Supreme Court of the United States that the constitutionality of such habitual-offender or recidivist statutes is no longer open to challenge. The only problems remaining constitutionally seem to relate to the State procedures meeting due process requirements when the habitual-offender or recidivist charge is presented to impose a more severe sentence. (Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446; see also Gayes v. New York, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962).

In the matter at hand, the petition contained sufficient allegations to warrant the issuance of a writ of habeas corpus, and such was done. The petitioner was brought to the City of Albany during a busy and regularly scheduled trial term of this Court in his prison gray by prison guards from Auburn Prison, Auburn, New York, approximately 175 miles from Albany. Previously I had assigned an attorney in Albany, New York, with whom the petitioner acknowledged at the hearing he was satisfied and had had sufficient time to correspond and discuss his matter. As I am most certain will happen in most of these situations, the petitioner was the only witness. New York filed a formal Return to the Writ, mostly legal in its content, and after the hearing forwarded a letter dated December 14, 1962 from Judge MacMillan of the Criminal Court of Record, Palm Beach, Florida. According to the letter, Judge MacMillan had discussed the matter with the now Senior Circuit Judge, Judge White, who had no independent recollection of sentencing the petitioner in 1954, but set forth his custom in sentencing procedures. The letter also informs that the files of the Assistant So-

licitor had been destroyed in 1957. The letter stated that the Judge was told by the Assistant Solicitor who prosecuted the petitioner that he had no independent recollection of the matter, but that it was never his policy when acting in his official capacity to suggest to a defendant to plead guilty. The letter, of course, is of doubtful competence in a judicial proceeding, but I shall file it for what it is worth and to point up the extreme burden and disadvantage New York will have to meet these challenges. The Court minutes accompanying the letter expressly state that Walter Lee Corbitt, the true name of the petitioner, pleaded guilty August 15, 1954 to Escaping Prison and Breaking and Entering to Commit Petit Larceny, and was sentenced to one year at hard labor concurrent on each count. The minutes set forth a state trial procedure unknown to me indicating that after the plea there was a State witness, a deputy Sheriff, and that defendant testified in his own behalf, and then was adjudged guilty and sentenced.

This lack of knowledge on my part of Florida criminal procedures points up the serious disadvantage and hardship for the district judge trained in New York law to apply the test of fundamental fairness that is determinative at the present time of constitutional deprivation in these lack of counsel situations. Of course, I can read, and I hope interpret reasonably well, the statutes of Florida but that gives no insight or feel of the criminal procedures of a distant state or its Judges that is usually gained by actual contact and experience. That is the reason Justice Frankfurter stated in his dissenting opinion in Darr v. Burford, 339 U.S. 200, 230, 231, 70 S.Ct. 587, 588, 603, 604, 94 L.Ed. 761, that nothing stands out more prominently in the experience of the Supreme Court of the United States than the doubts and difficulties in ascertaining law controlling local practices and local remedies. And he characterized the approach as a rule of wisdom, often applied by the Court, that questions of local law and local practices will not be decided by the highest

court in federal habeas corpus applications but will be submitted to the knowledgeable views of federal judges in the various localities. That is the weakness of untrained, long distance, judicial analysis that must result from initial review of out-state convictions in habeas corpus by the District Court, without the assistance of some review or decision in the foreign state court that possibly may be obtained.

Hearings to a District Judge with some degree of experience are not a difficult assignment. The petitioner at the hearing readily admitted that the name James Jessie Brown, which he sets forth as his name without qualification in the title of his petition, was an alias he assumed when he came to Suffolk County, New York, from Florida. He gave no reason, nor was he asked why he apparently inverted the forenames of the famed outlaw in his adopted alias. The petitioner, in his testimony, did not support with credence the material allegations he set forth in his petition. He was hazy about what the Judge asked him before his plea and did not recall whether he inquired about a lawyer or not. I am not inclined to believe his testimony concerning the promises of the Assistant County Solicitor because again it was vague, indefinite and improbable. (See United States ex rel. Wissenfeld v. Wilkins, 2 Cir., 281 F.2d 707). The petitioner testified he was nineteen years of age with only a third grade education at the time of his plea in August, 1954. However, he admitted that at the time of this escape and burglary involvement he was then serving one year for breaking and entering, being sentenced in February, 1954. I am never sure if precise degree of education is necessary or judicially settled for one to understand simple charges of crime such as here, escaping from prison and burglarizing a house. I do intend to keep my credulity in these proceedings properly balanced and sensible. The petitioner, although it may not be too relevant a factor here, received leniency and fair consideration in New York when sentenced as a second offender on June 24, 1958. He had been indicted for burglary, first degree, and grand larceny, first degree, and his plea was accepted to the crime of grand larceny, second degree, and as a second offender he was sentenced to a term of five to ten years. In answer to my question he admitted he burglarized the home in Suffolk County. As happens often in New York criminal practice under this mandatory sentencing statute, reductions of charges are made and agreed upon to avoid too harsh an impact from the multiple offender sentence. The real grievance of the petitioner, and I so find, is that he was denied parole several months ago.

My findings are that the petitioner voluntarily pleaded in Florida to simple charges that he well understood from previous criminal experience; that he was treated fairly; that his sentence was lenient and he was not misled, and under the totality of circumstances attending the plea and from his own testimony he was not constitutionally deprived of counsel as the law now stands. (Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595; Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Carnley v. Cochran, Corrections Director, State of Florida, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70). Hearing is soon scheduled in the Supreme Court of the United States in Gideon v. Cochran, 83 S.Ct. 115, Cert. Florida Supreme Court, 135 So.2d 746, with the point presented to overrule Betts v. Brady, supra.

The writ of habeas corpus is discharged and dismissed, and the petition upon which it is based is denied and dismissed.

It is So Ordered.