**UNITED STATES of America ex rel. Lee Arthur VINES, Petitioner-Relator,**

v.

**Robert E. MURPHY, as Warden of Auburn State Prison, Auburn, N. Y., Respondent.**

Civ. No. 9225.

United States District Court
N. D. New York.
March 8, 1963.

and file directly in this District Court for a federal writ of habeas corpus without any attempt to review challenged state convictions rendered in the Courts outside New York. It is apparent to me after reviewing since LaNear a substantial number of similar petitions attacking convictions from various States of the Union and holding hearings in enough so far concerning convictions used in New York from Virginia, Florida, and in this instance North Carolina, that the State prisoners, always alert, recognize a windfall. New York not only now has a heavy burden by an abrupt change of federal policy to uphold the convictions used against habitual offenders in these situations, but in my judgment is in a position of extreme disadvantage. It seems a fair interpretation that a number of the Judges of the Court of Appeals, Second Circuit, do not look with much favor on multiple offender sanctions. (United States ex rel. Savini v. Jackson, 2 Cir., 250 F.2d 349, 354–355; United States ex rel. Farnsworth v. Murphy (Waterman dissenting), 2 Cir., 254 F.2d 438, 448; United States ex rel. LaNear v. LaVallee, supra, 306 F.2d pg. 421). The young and able attorney who accepted willingly this assignment contends in his exemplary brief that such statements in the above cases and other pertinent rulings of the Court of Appeals, Second Circuit, may indicate a shift to the State of New York in the burden of proof concept in federal habeas corpus historically placed in some degree upon the petitioners. (United States ex rel. Wissenfeld v. Wilkins, 2 Cir., 281 F.2d 707, 716; United States ex rel. Easterling v. Wilkins, 2 Cir., 303 F. 2d 883; compare Johnson v. Zerbst, Warden, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461; Darr v. Burford, 339 U.S. 200, 218, 70 S.Ct. 587, 94 L.Ed. 761).

Joshua N. Koplovitz, Troy, N. Y., for petitioner-relator.

Louis J. Lefkowitz, Atty. Gen. of New York, Albany, N. Y., Raymond B. Madden, Asst. Atty. Gen., of counsel, for respondent.

JAMES T. FOLEY, District Judge.

The petitioner is another of an increasing number of New York State prisoners sentenced under the Multiple Offender Law of that State who take advantage of the recent ruling in United States ex rel. LaNear v. LaVallee, 2 Cir., 306 F.2d 417,

Be that as it may, the Multiple Offender Law of New York has long been a part of its criminal procedures and apparently the citizenry of New York, speaking its will through its Legislature and Executive feel such habitual offender or recidivist law a necessary safeguard in a struggle intense at times for law and

order to survive in New York. It must be felt this stringent statute reduces the lawless activity of a considerable and continuous influx of hard-core criminals into its borders, particularly in and around the large metropolitan areas of New York City. The New York Multiple Offender Law has been upheld by its highest court. (Sections 1941–1943 Penal Law, New York, McKinney's Consol.Laws c. 40; People v. Gowasky, 244 N.Y. 451, 458–460, 155 N.E. 737, 58 A.L.R. 9; People ex rel. Fernandez v. Kaiser, Warden, 256 N.Y. 581, 177 N.E. 149, cert. den. 284 U.S. 631, 52 S.Ct. 16, 76 L.Ed. 537.) The constitutionality of similar statutes in any State is beyond question, and the only doubtful area is the procedure available in the States to challenge, when presented, the recidivist charge in accordance with due process requirements. (Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446; Compare Gayes v. New York, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962). In the return here to this application by the Attorney General, it is again contended that there may be remedy in New York by motions in arrest of judgment, to vacate the sentence, to withdraw the plea and a new trial, or by appeal through the Courts of New York in the usual course to the United States Supreme Court. Such contentions are presently answered for this Court by the LaNear ruling (306 F.2d pg. 419), that there *is no method* provided in New York State for testing the validity of convictions by other sovereigns used as a basis for multiple offender sentences.

 There exists now a distressing stalemate between the federal-state systems, the result of which is to bypass the acknowledged value of screening and review by any State before direct intervention by federal habeas corpus, with inevitable disruption to the comity and true balance about which so much is written as necessary to maintain. (28 U.S. C.A. § 2254; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647; Darr v. Burford, supra, 339 U.S. 200, 70 S.Ct. 587; Brown v. Allen,

344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900.) Fortunately, there may not be too serious reaction or consequence from the resentencing at times of long-term prisoners of New York after immediate and direct review by a United States District Court, because often little is gained by the prisoner.

New York is not a backward State in any sense, has a good record in its criminal procedures with many safeguards therein for individual rights and an elaborate set of post conviction remedies unmatched, in my judgment, by any other State. I have found its Courts, in private practice and as a judge, progressive and responsible, never stubbornly resistant to constructive change in criminal prosecutions that might insure more efficiently constitutional protections. The Court of Appeals, New York, is second to none in the enunciation of principles for the lower courts to protect constitutional rights. (United States ex rel. Kiernan v. La Vallee, N.D.N.Y., 191 F.Supp. 455.) Courts of this character, in my judgment, need little supervision or prodding by the federal power to insure the proper administration of its criminal justice. Perfect justice will never be attained, and credit to integrity and competence should be given when due. In challenges to state custody the federal writ of habeas corpus is extremely limited in its function by statute and settled law. (28 U.S.C.A. § 2241(c) (3); McNally v. Hill, Warden (1934), 293 U.S. 131, 135–140, 55 S.Ct. 24, 79 L.Ed. 238; Parker v. Ellis (1959), 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963.)

This petitioner was accorded a hearing and assigned counsel upon his challenge by federal habeas corpus application herein against the New York sentence imposed upon him as a second offender. The hearing was satisfactory, the minutes transcribed and shall be filed with the Clerk.

In 1960 the petitioner was indicted in New York County for Manslaughter, Second Degree, for being involved in the killing of a man with his fists. On April 25,

1960, he pleaded guilty to the reduced charge of Assault, Second Degree, in the Court of General Sessions. He was then properly informed against, pursuant to the New York Statute, by District Attorney Frank S. Hogan of New York County as having been previously convicted of the crime of Manslaughter upon his plea in the Superior Court of Wake County, North Carolina where he was sentenced to not less than ten nor more than twelve years. In the Court of General Sessions pursuant to the law of New York the petitioner, being represented by counsel, admitted he was the same person convicted in North Carolina, made no challenge to the multiple offender information and was sentenced to a term of three years and six months minimum and seven years maximum, hardly to be considered an extreme or excessive sentence. As a first offense, the punishment allowable for Assault, Second Degree, is a term not exceeding five years. (Penal Law, Section 243.) It was developed at the hearing before me that the incident in North Carolina involved the killing of a human being by a rock instead of by fists, as later done in New York.

The petitioner was quite straightforward and honest in his testimony at the hearing. As a federal judge in this type evaluation I do not feel omniscient and possessed of discernment beyond that power of any other judge. I always keep in mind the admonition of Shakespeare that "there's no art to find the mind's construction in the face". On the stand the petitioner described the criminal procedures of North Carolina as they affected him. At the hearing, I was entirely unfamiliar with such procedures, not only by lack of direct contact but also by lack of any reading or research concerning them. (See United States ex rel. James Jessie Brown v. Murphy, Warden, N.D. N.Y., 212 F.Supp. 926.) It seems that in North Carolina the plea is first taken and then the witnesses are heard concerning the details of the crime, including testimony of the defendant. Such procedure may be an excellent safeguard for other States to consider as a protection against charges of alleged wrongful identification. (United States ex rel. Easterling v. Wilkins, 2 Cir., 303 F.2d 883.) That was done in this matter, and the petitioner Vines testified himself, and neither there nor here did he deny he was at least factually responsible, if not legally so, for the North Carolina killing. He made no claim at all that he was coerced by threat or fear into his plea, but just stated he pleaded voluntarily after he was advised by someone unidentified from the prosecutor's staff that he faced death in the gas chamber if he stood trial on the murder indictment, and that he could not be sentenced for more than twenty years if he pleaded guilty to Manslaughter. This was the choice he made, and it will always remain in the realm of the unknown whether or not an able lawyer would have advised him otherwise.

It would be most difficult for me to find that this rugged, cold individual, in his testimony and appearance before me, was ignorant, feebleminded or illiterate at the time he pleaded in North Carolina. He was twenty-one years of age then and had completed second year High School. The psychiatric report from the prisons of New York subpoenaed by his attorney into Court was read into the record in the presence of the petitioner. It, among other findings, evaluates him as possessing at least average verbal ability and average intellectual functioning. Such report indicates he has no remorse for either killing, and that is my conclusion also.

However, in my judgment, there is sufficient for the petitioner to prevail in his challenge. The testimony of the petitioner is worthy of belief that he did not have counsel, was not offered counsel, and did not have enough experience in the law to realize he may have been allowed counsel if requested. This judgment is based upon the evaluation of the petitioner's testimony keeping in mind the obvious inability of New York to provide any opposition or contradiction. (United States ex rel. Foreman v. Fay, D.C., 184 F.Supp. 535, 540.) In all the proceedings of this type, as long as this District Court

has the burden in the first instance, I intend to use common sense and apply the reasoning that like other judgments, a judgment based upon a plea of guilty is not of course to be lightly impeached in a collateral proceeding. (Williams v. Kaiser, Warden, 323 U.S. 471, 474, 65 S.Ct. 363, 89 L.Ed. 398.) There is some expression that may lead to belief that failure to assign counsel where one is charged with Murder, First Degree, is in itself an automatic deprivation of substantial or federal right. Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158, expressly limited the decision to ruling that "in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; * * *".

Each ruling in this troubled field has qualifying factors and little certainty, but the "absolute" interpretation that counsel is required in murder charges—and I realize there can be few absolutes and certainties—may be restricted to the situation where the accused is put on trial for his life. United States ex rel. Smith v. Jackson, 2 Cir., 234 F.2d 742, 745; United States ex rel. Reid v. Richmond, 2 Cir., 295 F.2d 83, 88; Crooker v. California, 357 U.S. 433, fn. 6, 78 S.Ct. 1287, 2 L.Ed.2d 1448.

Although it involved a federal conviction without the issue of lack of counsel, a classic, penetrating, judicial treatise on the voluntariness of a plea with a clear sense of the weakness of human evaluation by any judge in these perplexing situations was written by Judge Weinfeld, of the Southern District of New York. (United States v. Tateo, D.C., 214 F. Supp. 560.)

The petitioner was not put on trial on the murder charge, and he pleaded admittedly without force or inducement—and such plea was accepted—to a reduced charge that did not call for the forfeit of life. However, there was an odd incident in that he first pleaded guilty to Assault with deadly weapon, and it was during the post plea trial or hearing that the information came of the death of the person assaulted. The proceeding was stopped and the procedures were then moved, as the petitioner put it, from the "little court" to the "big court", and he was moved from the "little jail" to the "big jail". In a short time, he was indicted for Murder, First Degree. The rapidity of the change of charges and courts from assault to murder in which the death sentence might result is enough, in my judgment, to come within the general test of fundamental unfairness. The circumstances are not usual but exceptional, in my opinion. (Betts v. Brady, 316 U.S. 455, 473, 62 S.Ct. 1252, 86 L.Ed. 1595; Gibbs v. Burke, 337 U.S. 773, 780, 69 S. Ct. 1247, 93 L.Ed. 1686; Oyler v. Boles, 368 U.S. 448, 459, 82 S.Ct. 501, 7 L.Ed.2d 446; United States ex rel. Savini v. Jackson, 2 Cir., 250 F.2d 349, 352–353.) From the testimony of the petitioner it is not unreasonable that self-defense may have been asserted by a trained lawyer to rebut any charge or degree of criminality.

█ The writ of habeas corpus is sustained to the extent that the 1941 North Carolina conviction is declared constitutionally invalid. It may not be used by a Court of New York for the purpose of increasing the petitioner's sentence under the Multiple Offender Law of New York.

The petitioner is remanded to the custody of the Respondent Warden to be held by him pending proceedings to be promptly taken for the return of the petitioner to the Court of General Sessions, New York County, for resentence upon the March 8, 1960 conviction of the crime of Assault Second Degree, upon which conviction he was sentenced on April 25, 1960 to an indeterminate term with a minimum of three and one-half to a maximum of seven years.

It is so ordered.