**UNITED STATES of America ex rel. Clarence DUGGER, Relator,**

**v.**

**Hon. Robert E. MURPHY, as Warden of Auburn State Prison, Auburn, New York, Respondent.**

**Civ. No. 9360.**

United States District Court
N. D. New York.

July 25, 1963.

J. Michael Hippick, Albany, N. Y., for relator.

Louis J. Lefkowitz, Atty. Gen., State of New York, Albany, N. Y., for respondent; Joseph J. Rose, Asst. Atty. Gen., of counsel.

JAMES T. FOLEY, Chief Judge.

The petitioner is one of the many New York prisoners who file directly in this District Court the challenge to out-state convictions used to sentence in New York as multiple offender. (United States ex rel. LaNear v. LaVallee, 2 Cir., 306 F.2d 417). He was sentenced on February 2, 1962 to a term of a minimum of fifteen years to natural life as a fourth offender in the Court of General Sessions, New York County, upon his guilty plea to attempted Robbery Third Degree. The challenge is to a judgment of conviction after plea rendered in the County of Silver Bow, State of Montana on February 15, 1947 upon the usual ground that he did not have counsel, was not

informed of his right to counsel and did not intelligently waive his right to counsel. The locale of the challenge moves the analysis and perception of this District Court located in the Northern District of New York to the West, which in itself is a welcome change from the forays into the Courts, procedures and laws of the Southern States. (See Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. James Jessie Brown v. Murphy, Warden, (NDNY), 212 F.Supp. 926).

First an order to show cause was issued to which the Attorney General of New York made return and answer. Then, a writ of habeas corpus was issued for the production of the prisoner. Counsel was assigned and a hearing was held in Albany, New York, on April 15, 1963. The minutes of the hearing have been transcribed and shall be filed with the Clerk.

█ The petitioner, as occurs in most of these situations, was the only witness although we do have the circumstance where New York, usually helpless and at serious disadvantage to meet the issue, was able to produce an affidavit of the sentencing judge and court records contradictory of the testimony of the petitioner. (28 U.S.C.A. § 2246). The testimony of the petitioner is a pattern of the many long-term recidivists who come here directly under the LaNear ruling. The consequences of our decision, even though only a direction of resentence, may be very grave for society. Unfortunately, the life of the petitioner was filled with violations of law beginning in 1930. Several were serious; a State conviction for Burglary and Robbery in 1935 in Texas for which he was sentenced to five years, and federal convictions in 1940 for interstate theft (3 months), and in 1942 for false statement under the Selective Service Act (3 years). There is an extensive arrest record the proverbial mile long under a bewildering assortment of assumed names and aliases. It is true that such previous criminal experience, and this one is most extensive, may not be accorded conclusive weight alone to warrant a finding of intelligent waiver of right to a lawyer. (United States v. Lavelle, 2 Cir., 306 F.2d 216; United States v. Tribote, 2 Cir., 297 F.2d 598; United States v. Forlano, 2 Cir., 319 F.2d 617). But surely, such proclivity for falsehood, deception and crime must in good judgment and common sense be weighed on credibility in the search for the truth as to what happened in Montana in 1947. (United States ex rel. Foreman v. Fay (SDNY), 184 F.Supp. 535).

█ The testimony of the petitioner at the hearing paints a picture of legal procedure that, if accepted, would be below the standards of frontier justice of the Old West. Frankly, however, I am unable in the face of the affidavit of Judge Downey, dated April 17, 1963, who presided and sentenced the petitioner, fully supported by the detailed court records to the same effect (Exs. A, B), to give any credence to the testimony of the petitioner. He testified that he was dead drunk from drinking canned heat for the first time, may have committed the robbery to which he pleaded, was beaten and assaulted and dragged into court before a judge, and pleaded guilty immediately without the charge being read, or in any way informed of the charge. In view of the interest of the petitioner, and his background indicating carelessness with the truth, I reject the description as exaggeration fully contradicted by regular and detailed legal writings to the contrary. I accept as true the affidavit of the Judge and the Court records that the petitioner was asked if he wanted counsel appointed, declined and waived the same, and the petitioner requested immediate sentence. In these troublesome and important matters, changing and developing in approach and principle from day to day, the fundamentals must still remain that a judgment based upon a plea of guilty is not to be lightly impeached in a collateral proceeding, and when it is so attacked the judgment of a court carries with it a presumption of regularity. (Williams v. Kaiser, 323 U.S. 471, 474, 65 S.Ct. 363, 89 L.Ed. 398; Johnson v.

Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461). In conclusion, I think it of interest to note, particularly for judges who may be concerned about the comforts provided in New York State prisons, that the petitioner, who could be termed an expert in such accommodations, termed Auburn State Prison "Paradise" in comparison to prisons of another State where he was long confined.

My findings are that the petitioner was advised of his right to counsel, declined the same and was treated with fundamental fairness in the taking of the plea and immediate sentencing. (Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70).

The petition is denied and dismissed, and the writ of habeas corpus discharged. If any is necessary, the papers shall be filed without payment of fee, and it is

So Ordered.