# COLLINS *v.* MILLER, UNITED STATES MARSHAL FOR THE EASTERN DISTRICT OF LOUISIANA.

## CARLISLE, BRITISH CONSUL GENERAL *v.* COLLINS.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Nos. 350, 351.   Argued December 9, 1919.—Decided March 29, 1920.

A judgment of the District Court, in a *habeas corpus* proceeding wherein the construction of a treaty is drawn in question, is not appealable directly to this court (Jud. Code, § 238) unless it is final. P. 365.

It is the duty of this court in every case in which its jurisdiction depends on the finality of the judgment under review, to examine and determine that question whether raised by the parties or not. *Id.*

A judgment in *habeas corpus* dealing with the detention of the relator for foreign extradition on three charges, and denying relief as to one but assuming to order a further hearing by the commissioner as to the others has not the finality and completeness requisite for an appeal to this court. Pp. 368, 370.

The proper party to appeal from a judgment in *habeas corpus* directing the marshal to release a person held for foreign extradition is the marshal, not the foreign consul upon whose complaint the extradition proceedings were begun. P. 371.

Appeals dismissed.

THE case is stated in the opinion.

*Mr. J. Zach. Spearing* and *Mr. Guion Miller*, with whom *Mr. J. Kemp Bartlett* was on the briefs, for appellant in No. 350 and appellee in No. 351.

· *Mr. Charles Fox,* with whom *Mr. Robert H. Marr* and *Mr. Donaldson Caffery* were on the briefs, for appellee in No. 350 and appellant in No. 351.

MR. JUSTICE BRANDEIS. delivered the opinion of the court.

These are appeals from a single judgment entered by the District Court of the United States for the Eastern District of Louisiana on a petition for writs of *habeas corpus* and *certiorari.* The relator had been arrested on extradition proceedings. Each party asks to have reviewed the construction given below to provisions of our treaty with Great Britain, proclaimed August 9, 1842 (8 Stat. 572, 576), and of the supplementary treaty proclaimed April 22, 1901 (32 Stat. 1864). The questions presented are, therefore, of a character which may be reviewed upon direct appeal under § 238 of the Judicial . Code. *Charlton* v. *Kelly,* 229 U. S. 447. But this court has jurisdiction on writ of error and appeal under that section, as under others, only from final judgments. *McLish* v. *Roff,* 141 U. S. 661; *Heike* v. *United States,* 217 U. S. 423. And the rule applies to *habeas corpus* proceedings. *Harkrader* v. *Wadley,* 172 U. S. 148, 162. The fundamental question whether the judgment appealed from

is a final one within the meaning of the rule has suggested itself to the court; and it must be answered although it was not raised by either party. *Defiance Water Co.* v. *Defiance*, 191 U. S. 184, 194. In order to answer the question it is necessary to describe the proceedings before the committing magistrate as well as those in the District Court on the petition for a writ of *habeas corpus*.

In October and November, 1918, the British Consul General at New Orleans filed with the Honorable Rufus E. Foster, District Judge of the United States for the Eastern District of Louisiana, three separate affidavits each charging that Charles Glen Collins, who was then within the jurisdiction of that court, had committed at Bombay, India, the crime therein described as obtaining property under false pretenses, and that he stood charged therewith in the Chief Presidency Magistrate's Court at Bombay; and asking that he be committed as a fugitive from justice for the purpose of having him returned to India for trial. Warrants of arrest issued and Collins moved, as to each affidavit, to dismiss for want of jurisdiction, contending that the transactions in question were commercial dealings in which he had merely failed to pay debts incurred. Hearings, entitled "In the Matter of Extradition Proceedings of Charles Glen Collins," were had before Judge Foster, at which the Consul General and Collins appeared by counsel. Evidence in support of each of the three affidavits was introduced by the Consul General. Then Collins, who was sworn at his request, admitted his identity and that he had been present in India at the times the alleged crimes were committed. As to one of the charges, that of obtaining a pearl button from Mohamed Alli Zamiel ali Raza, he was allowed to testify further. But he was not permitted to testify as to matters concerning the other two which had been consolidated. And he was not permitted to introduce other witnesses in defense of any of the three

affidavits.   After the hearings were concluded Judge
Foster made two orders or judgments signed by him as
Judge of said United' States District Court and entitled
in said court.   In these orders he found, as to each of
the affidavits, that he deemed the evidence sufficient to
sustain the charge under the law and the treaty; and as
to each he ordered Collins recommitted to the House of
Detention in the custody of the United States marshal
for that district to await the order of the President of
the United States.   The two proceedings (which included
the three affidavits) were then consolidated.   Under date
of November 27, 1918, a certificate setting forth his find-
ings together with a copy of the record in all the proceed-
ings was transmitted to the Secretary of State.

This petition for writs of *habeas corpus* and *certiorari*
was filed by Collins, in said District Court, on January 8,
1919.   It set forth the proceedings before Judge Foster
on the three affidavits, and alleged that his detention was
illegal and in violation of rights secured to him by the
treaty; among other reasons because he was refused per-
mission to introduce evidence as above mentioned.   Dis-
trict Judge Grubb ordered that the writs issue; and the
marshal made return setting forth in substance the facts
above recited.   The case was heard before Judge Grubb
on February 21, 1919, the record before Judge Foster
being introduced.   On the same day Judge Grubb, with-
out delivering an opinion, entered an order which declared
that "relator's application for *habeas corpus* is denied "
so far as concerned the charge of obtaining the pearl
button from Mohamed Alli Zaimel ali Raza, and that
"the writs of *habeas corpus* are granted " so far as the
detention was based on the other two charges, but that
the relator be remanded to the House of Detention to
await further proceedings in said last two named affidavits.

"And it is further ordered that, as to the said two affi-
davits last mentioned, this cause be and is hereby re-

manded to the Honorable Rufus E. Foster, Judge, to the end that relator be given the opportunity of introducing such evidence as he might offer at a preliminary examination under the law of Louisiana." "

Neither party took any action in respect to such further proceedings before Judge Foster. On March 3, 1919, Collins petitioned for leave to appeal, contending that he should have been discharged on all three affidavits and his appeal was allowed. This is case No. 350 on the docket of this court. Later, the British Consul General petitioned for leave to appeal on the ground that Collins' application should have been definitely denied also as to the commitment on the other two affidavits. His appeal, being No. 351 on the docket of this court, was allowed March 28, 1919. ·

· *First:* Was the judgment appealed from a final one? A single petition for a writ of *habeas corpus* thus sets forth detention of the relator on three separate affidavits. As to the commitment on one of these the judgment entered by Judge Grubb directed that the writ be "denied." Such denial, or more appropriately dismissal, of the writ would obviously have been a final judgment, if it had stood alone. *McNamara* v. *Henkel*, 226 U. S. 520, 523. But the judgment appealed from dealt also with the detention on the other two affidavits. It declared that "the writs of *habeas corpus* are granted " as to the commitments on the other two affidavits and ordered that the case be remanded for further hearing before Judge Foster.

What was thus called granting the writ was not a discharge of the prisoner, deferred as in *In re Medley*, 134 U. S. 160, and in *In re Bonner*, 151 U. S. 242; or made conditional as in *United States* v. *Petkos*, 214 Fed. Rep. 978; *Billings* v. *Sitner*, 228 Fed. Rep. 315, and *Ex parte Romano*, 251 Fed. Rep. 762; or coupled with other disposition of him as in *In re Gut Lun*, 84 Fed. Rep. 323, and

*Ex parte Gytl,* 210 Fed. Rep. 918, 924. It more nearly resembles the kind of an order which an appellate tribunal enters on reversing and remanding the judgment of a lower court upon finding error in its proceedings. But the proceeding before a committing magistrate in international extradition is not subject to correction by appeal. See *Fong Yue Ting* v. *United States,* 149 U. S. 698, 714; *Sternaman* v. *Peck,* 80 Fed. Rep. 883. Compare *United States* v. *Ferreira,* 13 How. 40, 48; *United States, Petitioner,* 194 U. S. 194. And it is ordinarily beyond the scope of the review afforded by a writ of *habeas corpus* to correct error in the proceedings. *In re Kaine,* 14 How. 103, 122; *Ex parte Harding,* 120 U. S. 782, 784; *Charlton* v. *Kelly,* 229 U. S. 447, 457; *Henry* v. *Henkel,* 235 U. S. 219, 228. The order resembles, also, that which might be entered by a district judge after having reviewed the proceedings taking place before a United States commissioner, under the court's authority to assume control in the preliminary stages of matters of which it has the final decision under the law. *United States* v. *Berry,* 4 Fed. Rep. 779, 781; *In re Chin K. Shue,* 199 Fed. Rep. 282, 284; *The Mary,* 233 Fed. Rep. 121, 124; compare *Todd* v. *United States,* 158 U. S. 278, 282; *United States* v. *Allred,* 155 U. S. 591, 594; *In re Perkins,* 100 Fed. Rep. 950, 954. For an extradition commissioner is an officer of the court which appoints him. See *Grin* v. *Shine,* 187 U. S. 181, 187; *In re Grin,* 112 Fed. Rep. 790, 794. But here the extradition commissioner had certified his findings to the Secretary of State before the petition for writ of *habeas corpus* was filed. Whether, for this reason, the time had not passed when the court could correct the action of its commissioner, except upon reopening of the proceeding before him with the consent of the Executive (see 6 Ops. Atty. Gen. 91),—or, in other words, whether in such a case the power of the court is not limited to ordering the discharge of the prisoner either absolutely

or conditionally except upon a rehearing before the commissioner with the consent of the President—this question, we are not required to consider at this time. For the proceeding ordered by Judge Grubb had not been taken; nor had the power sought to be exercised by him been challenged.. Nor need we consider whether Judge Grubb, having found that a proper hearing had been denied by the committing magistrate on the two affidavits, might have heard the case *de novo*, and have determined thereon whether the prisoner should be discharged; compare *Chin Yow* v. *United States*, 208 U. S. 8, 13; *Whitfield* v. *Hanges*, 222 Fed. Rep. 745, 746; *United States* v. *Williams*, 193 Fed. Rep. 228; for Judge Grubb did not undertake to do so. The prisoner remained under the authority of the District Court (see Mr. Justice Nelson in. *In re Kaine*, 14 How. 103, 133–4); and as the writ of *habeas corpus* had not been disposed of there so far as concerned the detention on two of the three affidavits, the decision below on that branch of the case was not final.

*Second:* A case may not be brought here by appeal or writ of error in fragments. To be appealable the judgment must be not only final, but complete. *United States* v. *Girault*, 11 How. 22, 32; *Holcombe* v. *McKusick*, 20 How. 552, 554; *Bostwick* v. *Brinkerhoff*, 106 U. S. 3, 4; *Grant* v. *Phœnix Ins. Co.*, 106 U. S. 429, 431; *Dainese* v.. *Kendall*, 119 U. S. 53; *Covington* v. *Covington First National Bank*, 185 U. S. 270, 277; *Heike* v. *United States*, 217 U. S. 423, 429; *Rexford* v. *Brunswick-Balke-Collender Co.*, 228 U. S. 339, 346. And the rule requires that the judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved. *Louisiana Navigation Co.* v. *Oyster Commission*, 226 U. S. 99, 101; *Sheppy* v. *Stevens*, 200 Fed. Rep. 946. The seeming exception to this rule by which an adjudication final in its nature of

matters distinct from the general subject of the litigation, like a claim to property presented by intervening petition in a receivership proceeding, has been treated as final so as to authorize an appeal without awaiting the termination of the general litigation below, *Central Trust Co.* v. *Grant Locomotive Works*, 135 U. S. 207, 224; *Williams* v. *Morgan*, 111 U. S. 684, 699; *Trustees* v. *Greenough*, 105 U. S. 527, has no application here. Nor have cases like *Forgay* v. *Conrad*, 6 How. 201, 204, and *Thomson* v. *Dean*, 7 Wall. 342, 345, where decrees finally disposing of property which the successful party was entitled to have carried into execution immediately, were held appealable, although certain accounts pursuant to the decree remained to be settled. Here a single judgment deals with the detention on three affidavits. Only one branch of the case has been finally disposed of below, therefore none of it is ripe for review by this court.

*Third:* In what has been said we must not be understood as recognizing the British Consul General as the party entitled to appeal from a decision in Collins' favor. For the writ of *habeas corpus* was directed to the United States marshal who held Collins in custody and the marshal was the party in whom rested the right to appeal, if Collins prevailed on final judgment. See *Charlton* v. *Kelly, supra.*

Both appeals are

*Dismissed for want of jurisdiction.*