UNITED STATES v. ROITMAN et al.

District Court, N. D. Illinois, E. D. November 26, 1929.

No. 16933.

**LINDLEY, District Judge.** Roitman, owner and vendor of the property hereinafter mentioned, and Rosenthal, his employee, are charged with the unlawful possession of certain stills, copper coils, condensers, still heads, coloring matter, and similar property, averred to be designed for the manufacture of intoxicating liquor, intended for use in violating title 2 of the National Prohibition Act (27 USCA § 4 et seq.) in violation of that act (27 USCA). The information avers that defendants well knew that the said property was so designed for the manufacture of intoxicating liquor. Defendants have pleaded nolo contendere.

According to the evidence, two prohibition agents, observing a sidewalk stand in the custody of Rosenthal, at which were exhibited various articles alleged to be suitable for the assembling of stills, told Rosenthal they desired to buy a still. Rosenthal then took them to Roitman's store and introduced them to the latter. They made no purchase at that time. Later they returned, and then told Rosenthal to show them a still and how to operate it. A cooker, goose neck, coil and cooler or condenser were then connected, the cooker being placed on a chair and the condenser on the floor. The agents inquired and were advised how much water should be placed in the cooker. They asked what kind of mash was best. Roitman replied that they should use rye to make rye whisky and corn to make corn whisky. He told them that in an eight-gallon still they should use two pounds of cracked corn or rye, ten pounds of sugar, and two pounds of yeast. They asked how to run the material through the still. He replied that it could be distilled once or twice, one distillation producing about 80 proof alcohol, and two about 150 or 160 proof. They asked how they might determine the proof. He replied that he had hydrometers for measuring alcoholic content, produced one such, and demonstrated its use. They inquired as to color, and he replied that he could let them have two bottles of Bourbon coloring. He took from a jug some whisky, and gave each of them a drink, remarking that they could make as good whisky; that he had made that which they drank, and had colored it with the same coloring matter. He told them to use one bottle of coloring to four gallons of finished product. Roitman told the agents to keep the cooler filled with cold water, and to catch the finished product in a jug or other container placed beneath the outlet. He sold them a glass test tube, and advised them that, if they would put some of the product in this tube and then draw it into the hydrometer, they would get a reading indicating the proof. He said he had a lot of stills to sell and suggested they send their friends to him. The apparatus then purchased was taken away by the prohibition agents and produced in court at the trial.

Directly after making the purchase, one of the agents made an affidavit before the commissioner, stating that a purchase of certain property, enumerating the items heretofore mentioned, had been made, and that said property was designed for manufacture of intoxicating liquor intended for violation of the act (27 USCA). A search warrant issued and much property of character similar to that purchased seized. A few days later Roitman filed with the commissioner his petition to quash the warrant and suppress the evidence. Evidence was heard, and the commissioner quashed the warrant, holding, however, rightfully that the disposition of the property seized could be determined only by the court. Prior to the trial defendants moved, in this court, to suppress the evidence of the property seized, and the government filed its cross-motion to vacate the order of the commissioner quashing the warrant. Action upon each of these motions was deferred until completion of the evidence.

The first question to be disposed of is whether the court may vacate, amend, or modify the order of the commissioner, or enter any order at variance therewith, or whether that order is res adjudicata of the questions therein disposed of. In United States v. Maresca, 266 F. 713, Judge Hough, sitting in District Court, held that an order of the commissioner directing property seized under a search warrant issued by him is a judgment of the District Court, from which the writ of error lies to the Circuit Court of Appeals, and that the District Judge may not set aside the same. In United States v. Casino (D. C.) 286 F. 976, 979, Judge Learned Hand reached a contrary conclusion, holding that the action

of the commissioner upon a motion to grant a search warrant is not the action of the District Court; that that court may review such order upon motion, saying:

"The Supreme Court has decided that a commissioner sitting to issue warrants of arrest on preliminary hearing is not the holding of any court of the United States at all (Todd v. U. S., 158 U. S. 278, 15 S. Ct. 889, 39 L. Ed. 982), and there is certainly no distinction between his action in such a case and in issuing a search warrant. * * * I feel, therefore, bound to hold that the action of the commissioner was not the action of the District Court, and that a motion may be made in that court to correct it. * * * It is clear that certiorari, assuming that this court has power in a proper case to issue that writ (Angelus v. Sullivan, 246 F. 54, 63, 66, 67, 158 C. C. A. 280; U. S. ex rel. Roman v. Rauch [D. C.] 253 F. 814), is not necessary, and indeed, if the action of the commissioner be not judicial, the common-law writ, which is all that could go in any event, would be improper. What, then, should be the proper practice? As the district attorney represented the United States or the prohibition agents before the commissioner, and as this is not a writ issued to another tribunal, but only a motion to review the action of a subordinate officer of the District Court, there is no occasion to do more than move for a correction of his order on notice to the district attorney. The court might, as suggested above, sua sponte take notice of the record made before the commissioner, or require the respondent on the motion to produce it."

The Circuit Court of Appeals for the Second Circuit reached a similar conclusion in Re No. 191 Front Street, 5 F.(2d) 282 at page 285. Of interest in this connection are United States v. Madden (D. C.) 297 F. 679; United States v. Berry (D. C.) 4 F. 779; United States v. Nagle (D. C.) 34 F.(2d) 952; and In re Film and Pictorial Representation of Dempsey-Tunney Fight (D. C.) 22 F.(2d) 837.

In Herter v. United States, 33 F.(2d) 402, 404, the Circuit Court of Appeals for the Ninth Circuit held that the District Court might upon motion review the action of the commissioner, suppressing the evidence obtained upon the search conducted upon a warrant issued by the latter. Here the court said:

"It is to be borne in mind that within the scope of the commissioner's order here the proceeding was not an independent one admitting of an appeal, but was incident only to the criminal prosecution pending in the District Court. Cogen v. United States, 278 U. S. 221, 49 S. Ct. 118, 73 L. Ed. 275. * * * At most, we think the action of the commissioner should be held to be little more than advisory in a case where the proceeding to quash is but an incident to a criminal prosecution, and fully subject to the supervision of the court in which such prosecution is pending."

The court held that the commissioner was not justified in entering the order, and that the property seized was rightfully received and considered by the District Court.

That these conclusions are proper appears from the holding of the Supreme Court in Collins v. Miller, 252 U. S. 364 at page 369, 40 S. Ct. 347, 64 L. Ed. 616, to the effect that the District Court has authority to assume control of the commissioner's action as a part of the preliminary stages of matters upon which it has final decision, and the decision of the Circuit Court of Appeals of this circuit in United States v. Various Documents, Papers and Books of Briggs & Turivas, 278 F. 944, to the effect that a commissioner's order is not an order of the District Court, and that no appeal on writ of error therefrom will lie.

The facts submitted to this court establish clearly that the order of the commissioner quashing the search warrant was unwarranted, that the warrant was issued upon proper showing, and that the cross-motion of the government should prevail.

█ However, if the court ignore all evidence obtained under the warrant, that remaining leads to but one conclusion, viz. that the property in possession of defendants and sold to the agents was designed for the manufacture of intoxicating liquor intended to be used in violation of the Prohibition Act (27 USCA). Though defendants deny all the evidence of the agents as to the directions for operation of the still, composition of the mash, proof of the product and similar matters, the sale of Bourbon coloring matter, hydrometer, appearance of the apparatus, and other circumstances in evidence corroborate the government's testimony, and lead inevitably to the conclusion that defendants knew that the utensils were being bought for the sole purpose of manufacturing illicit intoxicating liquor, that defendants instructed the purchasers how to make rye whisky and corn whisky by means of the devices, told them how to color and flavor the product, sold them coloring matter and proof-testing devices, intended that the articles sold should be assembled and operated and used for the purpose of manufacturing illicit liquor, and designed and mechanically prepared the various

component parts for quick assembly and efficient operation as a still making such liquor. Under the rules previously announced in Rossman v. United States (C. C. A.) 280 F. 950, and Weinstein v. United States (C. C. A.) 293 F. 388, it must be held that defendants have violated the law as charged in the information.

It is the judgment of the court that defendant Roitman be fined in the sum of $500 and costs of prosecution, that defendant Rosenthal be fined $100, and that both defendants be committed to the Lake county jail until said fines are paid.