**DADE COUNTY, FLA., v. UNITED STATES.**

**No. 10926.**

Circuit Court of Appeals, Fifth Circuit.

April 22, 1944.

J. Mark Wilcox, of Miami, Fla., for appellant.

Roger P. Marquis, Atty., Department of Justice, of Washington, D. C., Norman M. Littell, Asst. Atty. Gen., and Vernon L. Wilkinson, Chief of Appellate Section, Lands Division, Department of Justice, of Washington, D. C., Stuart W. Patton, Sp. Atty., Lands Division, Department of Justice, of Miami, Fla., and H. S. Phillips, U. S. Atty., of Tampa, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The question immediately for decision is whether the appeal is from a final judgment so as to give this court jurisdiction under 28 U.S.C.A. § 225.

On Feb. 12, 1943, a proceeding was filed in the District Court for condemnation under stated Acts of Congress, including the Second War Powers Act of March 27, 1942, 50 U.S.C.A. Appendix, § 632, of a tract of land in Dade County, Florida, determined by the Secretary of War to be necessary for a supply and repair depot in connection with a Government airport. Immediate possession was alleged to be necessary and vital to the prosecution of the present war, and all necessary orders were prayed to that end, and for a vesting of a fee title in the United States but subject to existing easements for public roads and highways, and for the ascertainment and distribution of just compensation to persons entitled. The court on Feb. 15 made an ex parte order which recited the sufficiency of the petition and the existence of a state of war, and ordered immediate possession to be given, "subject to existing easements for public roads and highways", and that the Marshal serve a copy of the order on every person found in possession. On March 24 the United States amended the petition by striking out the words subject to public roads and highways. The court the same day granted a new order for possession which conformed to the amendment. On April 14, Dade County entered an objection to the taking of two named highways in fee simple, on the grounds that the United States cannot legally acquire fee simple title to essential public highways belonging to a subdivision of the State of Florida, and can only acquire the use of them during the national emergency. A motion was also filed on the same grounds to modify the last order for possession. On May 24 and July 23 orders were taken apparently ex parte, and based on declarations of taking and the deposit in the registry of the court of sums of money as the estimated just compensation of two parcels of the land, which orders declared that the United States was vested with the title in fee simple to the lands described. On August 16 the United States sought to amend the first declaration of taking so as to include the roads and highways. On that date the judge heard the objection and motion of Dade County and overruled them, and by a

separate order of the same date amended the order on the declaration of taking as moved by the United States. The case is otherwise still pending. The United States has been in possession since Feb. 15, 1943. On Nov. 13, 1943, Dade County gave notice of appeal from the order of Aug. 16, 1943.

We are of opinion that the refusal to modify the order touching possession, and the amendment of the order touching the vesting of title are not final judgments substantially disposing of the case and leaving merely a distribution of a fund to be accomplished. On the contrary the orders in question are really pro forma, or at most incidental, the real function of the court being to ascertain the just compensation to be paid and to distribute it. The court does not award the right of possession nor adjudge the title. The United States, acting through the Congress and the agencies which Congress appoints, takes what is needed, recognizing the courts as the constitutional organ to fix the constitutional just compensation and ascertain its owners. Especially is this true under the Second War Powers Act. It amends the Act of July 2, 1917, 50 U.S.C.A. § 171, with reference to taking by the Secretary of War for military purposes, and provides as to possession: "Upon or after the filing of the condemnation petition, immediate possession may be taken and the property may be occupied, used, and improved for the purposes of this Act notwithstanding any other law." 50 U.S. C.A. Appendix, § 632. Practically the same right of immediate possession existed under the Act of July 2, 1917, "in time of war, or the imminence thereof." 50 U.S. C.A. § 171. The law gives the right of possession, apparently without the necessity of any court order, though it is orderly and decent to get one.

Under the "Declaration of Taking Act", of Feb. 26, 1931, 40 U.S.C.A. § 258a, which applies to all condemnations outside the District of Columbia, for any public use, in war or peace, the situation is somewhat different. As to the matter of possession the provision is: "The court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner." But in the present case possession had been ordered and taken under the War Powers Act long before any declarations of taking were filed. They are important only as binding the United States finally to take; and as causing a transfer of title when accompanied by a deposit in court of the estimated just compensation. But again the court's order does not cause the title to vest. The statute declares: "Upon the filing of said declaration of taking and the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands * * * shall vest in the United States of America * * * and the right to just compensation for the same shall vest in the persons entitled thereto." It does not matter whether the court makes any order about it or not. The Act proceeds to say: "and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein." That is the real and substantial function of the court. That judgment is the essential and final one. What precedes is interlocutory. This has been held in many cases where the condemnation statutes involved gave the courts a wider sphere of action than those we are considering. Luxton v. North River Bridge Co., 147 U.S. 337, 341, 13 S.Ct. 356, 37 L.Ed. 194; State of Washington ex rel. Grays Harbor Logging Co. v. Coats-Fordney Logging Co., 243 U.S. 251, 37 S.Ct. 295, 61 L.Ed. 702 (cited and followed so lately as Public Service Co. v. City of Lebanon, 305 U.S. 558, 59 S.Ct. 84, 83 L.Ed. 352); Southern R. Co. v. Postal Telegraph Cable Co., 179 U.S. 641, 21 S.Ct. 249, 45 L.Ed. 355; Dieckman v. United States, 7 Cir., 88 F.2d 902. And see generally cases cited in Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616. We do not follow Puerto Rico Ry. & Light Co. v. United States, 1 Cir., 131 F.2d 491, and United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, esteeming that the authorities there relied on, that a judgment settling the main controversy is final though an accounting remains to be had or a receivership is to be administered, are not applicable here.

Dade County, we conclude, may not arrest the condemnation proceeding by an appeal at this time touching the possession or title to its roads. That may be examined after compensation has been fixed. The passing of the present emergency may result in an adjustment. If it be urgently important to obtain an early judicial decision as to whether a public highway may

be taken in fee simple by the United States, a remedy by injunction may be open. It was used in State of Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487.

The appeal is premature and is dismissed.