**UNITED STATES** ex rel. Benjamin REID, Petitioner-Appellee,

v.

Mark S. RICHMOND, Warden of Connecticut State Prison, Respondent-Appellant.

No. 314, Docket 26601.

United States Court of Appeals Second Circuit.

Argued March 27, 1961.

Decided Sept. 19, 1961.

Rehearing Denied Oct. 11, 1961.

Certiorari Denied Dec. 18, 1961.

See 82 S.Ct. 390.

William D. Graham, Hartford, Conn. (Joseph LaPlante, Hartford, Conn., on the brief), for petitioner-appellee.

John D. LaBelle, State's Attorney, Manchester, Conn. and J. Read Mur-phy, Assistant State's Attorney, Hartford, Conn. (George D. Stoughton, Assistant State's Attorney, Hartford, Conn., on the brief), for respondent-appellant.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

The warden of the Connecticut State Prison appeals from a judgment of the United States District Court for the District of Connecticut which vacated the first degree murder conviction of Benjamin Reid entered in the Superior Court for Hartford County and directed that he be discharged from custody unless given a new trial within a reasonable time. The decision of the district court was made upon remand of the case after we reversed an earlier discharge of the writ of habeas corpus. We instructed the district court to reconsider its determination in light of the complete transcript of the trial and to decide whether the delay in assigning counsel to Reid was so prejudicial as to render his conviction unconstitutional. 2 Cir., 1960, 277 F.2d 702. Judge Smith took testimony with respect to Reid's intelligence and considered the state court record. He then made detailed findings of fact and concluded that "in a capital case involving one of Reid's age, mentality and schooling, provision of counsel was necessary at least as soon as the formal accusation of murder was made in the Police Court and that the use of statements elicited from him thereafter while kept in ignorance of his rights made the trial fundamentally unfair." [1] It is from this finding and conclusion of law that the appeal is taken.[2]

1. Judge Smith's Conclusions of Law 2 and 3 are as follows:
"2. It is the duty of the courts of the state, when a minor of limited intelligence, ignorant of his legal rights, is brought before them on a capital charge, to inform the accused of his right to counsel and to provide the assistance of counsel if the accused is unable to do so because of indigence.

"3. Confessions obtained while an accused is deprived of such a right to counsel are inadmissible in the trial of a capital case, and their use a violation of the Fourteenth Amendment guarantee of due process of law."

2. The district court sustained the writ and delayed Reid's release in order to give Connecticut an opportunity to retry him.

The events having to do with Reid's part in the death of Florine McCluney and his actions thereafter are hardly in dispute. In relating them, we adopt the findings of the district court with such nuances as are most favorable to the relator, but his own testimony at the trial, aside from his admissions which are now complained of, leave no doubt that he was solely responsible for Florine McCluney's death.

About nine o'clock on the night of January 15, 1957, in Hartford, Reid waylaid his neighbor, Mrs. McCluney, struck her on the head with a hammer, dragged her a short distance to her automobile, again struck her with the hammer, and placed her in the rear seat of the car where she was found dead and frozen the next morning. Although he had robbery in mind at first, Reid took no money from Mrs. McCluney.

He disposed of his outer clothing and took an early morning train to New Haven and went to his sister's home where he arrived at 2:45 a. m. on January 16, and it is there that the New Haven police found him at 9:10 p. m. following a request from the Hartford police that he be apprehended. Reid was taken to New Haven headquarters and was questioned briefly. The Hartford police arrived later that night and drove Reid to Hartford. On the way back Reid said he would talk if he could first see his wife with whom he had not been living for some weeks.

Mrs. Reid was at Hartford police headquarters when Reid arrived there at 1:10 a. m. on January 17. After several minutes of conversation with his wife. Reid was interrogated and was told that anything he said could be used against him.

Reid then confessed that he had participated in the killing the night before, but he said that a friend of his, one Eddie Green, had struck the blow with the hammer. He stated that Green had told him that he (Green) was broke and needed money, and that he would see whether Mrs. McCluney had any. When Mrs. McCluney came by, Reid then said, Green hit her with a hammer and Reid helped Green drag the body to the car.

The confession was typed in narrative form by a police captain, signed by Reid, and witnessed by his wife, in whose presence it had been given. At 4:30 a. m. Reid was booked for murder and locked in a cell which was equipped with a cot. At about 9:00 a. m. on January 17, he was brought before the Hartford Police Court, where the following colloquy took place:

"Prosecutor James Egan: In this case, if it please Your Honor, there is a request for a continuance for three weeks for further investigation. This man is alleged to have committed a murder in Hartford at 246 Pleasant Street, yesterday.

"The Court: What date do you want? How much time do you need on it?

"Officer: Better give us about three weeks, anyhow, on it.

"The Court: Give you a month on it?

"Officer: All right.

"The Court: Continued to February 14th without bond."

Reid was not required to plead. No counsel was appointed for him, and he was not informed by the court of his right to counsel under Connecticut law, Conn.Rev.Gen.Stat. § 6–62 (1958). Reid

This accorded with the suggestions made in various Supreme Court opinions. E. G. Dowd v. United States ex rel. Cook, 1951, 340 U.S. 206, 210, 71 S.Ct. 262, 95 L.Ed. 215; Mahler v. Eby, 1924, 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549; In re Bonner, 1894, 151 U.S. 242, 261, 14 S.Ct. 323, 38 L.Ed. 149; Medley, Petitioner, 1890, 134 U.S. 160, 174, 10 S.Ct. 384, 33 L.Ed. 835. The order

was not a conditional one so as to be interlocutory and nonappealable, United States ex rel. Bauer v. Shaughnessy, 2 Cir., 1949, 178 F.2d 756, since it was a considered final disposition of the merits of the relator's claim with Reid's actual discharge deferred for a reasonable time. See Collins v. Miller, 1920, 252 U.S. 364, 368, 40 S.Ct. 347, 64 L.Ed. 616.

was of "dull-normal" intelligence and had become 19 years of age on December 27, 1956; the police knew he was a minor, but they did not inform the court of this fact. No guardian *ad litem* was appointed; the court did not advise him of his right to counsel or of his right to remain silent.

Although Reid had been remanded to the Hartford County Jail, he was taken from the Police Court back to the Detective Bureau. Upon his arrival there, Reid was urged to tell the truth and he had a crying spell which lasted ten or fifteen minutes. He again asked that his wife be present, and when she arrived, at about 10:00 a. m., he volunteered a second confession in which he said that he alone lay in wait for and hit Mrs. McCluney with the intent of robbing her. The statement was elicited without any notice to Reid that he could retain or be assigned counsel and without mention of his right to remain silent.

After the second statement had been transcribed and signed, Reid accompanied the Hartford police on a tour of his movements on the day of the crime. The tour lasted from approximately 1:30 p. m. to 3:30 p. m. At 4:00 p. m. he was taken to the Hartford Health Department where a blood sample was taken from his arm. He was then returned to the Hartford County Jail at about 4:15 p. m.

On January 18 Reid led the police to the place where he had thrown the hammer with which the murder had been committed. The hammer head and the key to Mrs. McCluney's car were found by the police in that vicinity. On the same day he was also given a mental examination by a Dr. Bancroft, who filed a report on the interview with the State Attorney's Office. Both confessions, as well as statements made by Reid during the tours and the mental examination, were used by the prosecution at the state trial.[3]

█ It was not until March 7, 1957, the date on which he was called before the grand jury, that Reid first conferred with an attorney. Public Defender James D. Cosgrove had a short conversation with Reid before the grand jury hearing although he was not formally appointed to represent Reid until April 5. On April 26, 1957, William D. Graham was appointed Special Assistant Public Defender to assist in the preparation of Reid's case.[4]

Reid's trial began on June 20, 1957. On the second day of the trial, when Captain MacDonald was on the stand, the prosecution offered to introduce into evidence the two confessions made by Reid on January 17 and the following transpired:

"Mr. Wright (Assistant State's Attorney): Your Honor, at this time I am going to offer evidence concerning confessions, and I want the defense to know that before I go ahead.

3. On February 6 Reid appeared before a coroner's inquest, where he was told of his right not to incriminate himself but he was not advised of his right to counsel. However, none of the incriminating statements made by him at the inquest was introduced into evidence at the trial. Since there is no claim of any prejudice in this case other than the introduction into evidence at the trial of the two statements made by Reid on January 17 while he was unrepresented by counsel, we need not deal with the failure to assign counsel for the coroner's inquest.

4. Before the state trial Reid requested that another attorney be substituted for the Public Defender. The request was denied since Reid was financially unable to retain the counsel whom he wanted the court to appoint. Mr. Cosgrove, the Public Defender, also asked to be discharged before the trial began, on the ground that Reid had refused to cooperate with him, but this request was also denied. The rulings on both these requests were proper under all the circumstances. We held in our earlier opinion in this case, 277 F.2d 702, 703, that the Connecticut Public Defender statute is constitutional; it was surely intended to cover just such a case. Reid has continued attacking his attorney in this court, although Mr. Cosgrove no longer represents him, but neither here nor in the Connecticut courts has Reid given any reason for the claim of unhappiness with counsel.

"The Court: Any objection?

"Mr. Cosgrove: I can state that the State has not established a proper foundation, but as long as I know what it plans to do, I would move for a preliminary inquiry, in any event, so that we'd save that much time.

"The Court: The jury may be excused."

The preliminary hearing related not only to the two confessions but also to the later statements made by Reid during the tour of the scene of the crime and the search for the hammer and key. Several police officers were examined and thoroughly cross-examined with regard to the treatment Reid received at the hands of the Hartford Police and the procedures followed in the Police Court. The hearing consumed the greater portion of the afternoon session of the second day of the trial and part of the morning of the third day. When the State finished putting in its evidence, the following ensued:

"Mr. Wright: That is all the State has to offer on the preliminary inquiry, Your Honor.

"Mr. Cosgrove: Your Honor, this preliminary inquiry was requested by us, Mr. Graham and myself, representing the accused, and we did it feeling that we should explore all the circumstances leading to any written statement or oral statements by the accused. We are satisfied now that we will not object to the admission of any of—either of the written statements or any of the testimony concerning this alleged tour."

After some more discussion on a tangential question, the colloquy returned to the subject of the admissibility of the confessions:

"The Court: The defense doesn't care to offer any testimony?

"Mr. Cosgrove: No, Your Honor.

"The Court: There is no objection to the introduction of the two statements by the defendant and this officer's report and the oral testimony?

"Mr. Cosgrove: Yes, based upon the testimony that has been produced at this preliminary inquiry, we will not direct any motion to the Court, at this time."

The jury was then recalled, and in its presence the captain of detectives testified to the circumstances under which the confessions were made. When the Assistant State's Attorney offered the first confession as a full exhibit, Mr. Cosgrove responded, "No objection, if the Court please." The confession was then read to the jury. The same procedure was used in getting the second statement before the jury, and again Reid's counsel responded to the offer with "No objection." Nor was any objection made to the testimony concerning the tour taken by Reid and the police officers or to the recitation to the jury of the contents of the written reports made by the officers who accompanied Reid on the tour.

On the fourth day of the trial, Reid took the stand on his own behalf. He said that his lawyers told him that he did not have to testify and that his silence could not be held against him. On direct examination he stated that he had struck the blows with the hammer which had killed Mrs. McCluney but maintained that he had not meant to kill her. When asked by his counsel why he had hit Mrs. McCluney, he replied, "I couldn't tell you because I don't even know. I don't know the answer myself."

On cross-examination, after denying at first that he had left his house on the afternoon of January 15 with the idea of robbery in mind, Reid conceded, "I made the attempt but I changed my mind at the last moment." The next question was "You made the attempt to rob her?" He replied, "Right."

Taken altogether, there was very little difference between Reid's trial testimony and his second confession. It was the strategy of the defense to admit all that had happened, including the confessions, and to attempt thereby to derive whatever benefit there might be from an open and consistent course of not attempting

to deny or conceal anything from the jury.

The jury deliberated for one hour and twenty minutes and found Reid guilty of murder in the first degree. It made no recommendation of life imprisonment, as it could have done under Connecticut law. Reid was thereupon sentenced to death. His conviction was affirmed by the Connecticut Supreme Court of Errors. 1959, 146 Conn. 227, 149 A.2d 698.[5]

■■■ Whether the conviction and sentence should be vacated for the reason urged to this court—that assignment of counsel was not timely—depends on whether the trial at which Reid was convicted was "fundamentally unfair" because of the delay in informing Reid of his rights and in assigning counsel. Crooker v. People of State of California, 1958, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448. This was a capital case, and the right to the assistance of counsel is "absolute" when an accused is on trial for his life. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; see Crooker v. People of State of California, 1958, 357 U.S. 433, 441, footnote 6, 78 S.Ct. 1287, 2 L.Ed.2d 1448. But the precise point during pretrial proceedings at which the duty to assign counsel arises is not set by any inflexible rule; the court must judge whether, under all the circumstances, the delay was such as to infect the trial with "fundamental unfairness." Cf. Lisenba v. People of State of California, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166.

■■■ Judge Smith, in holding that Reid's conviction was unconstitutional re-

lied in large measure on the opinion of Mr. Justice Stewart in Spano v. People of State of New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265. The four Justices who joined in the separate concurrences written in the Spano case did indeed hold that a state conviction for a capital offense must be set aside if during the trial the prosecution introduces into evidence a confession extracted at a time when the accused should have been permitted to consult with counsel. But in that case the confession was used at the trial over the objection of the defendant's counsel. If the defendant, through his attorney, objects to the use at the trial of statements taken from him while he was improperly deprived of the assistance of counsel, the submission of these statements to the jury over the defendant's protest could be said to infect the trial with unfairness. But if the defendant is willing to have his admissions read to the jury, it is not unfair for the prosecutor to read them. In such a case there is no violation of the requirements of due process.

On the facts of this case we hold that Reid's trial was not rendered fundamentally unfair by the use of the confessions elicited from him while he was yet unrepresented by counsel.[6] Competent counsel was assigned eleven weeks before the trial began, and a full investigation into the circumstances under which the confessions were made was conducted out of the presence of the jury. At that point Reid's attorney could have objected to the admission of the statements on the ground that they were given while Reid was being denied his constitutional right

---

5. On the first appeal we noted that Judge Smith's ruling that Reid had exhausted his state remedies was unchallenged. 277 F.2d at page 703. The point now raised on this appeal was also considered by the highest state court on appeal from Reid's conviction. The case is therefore ripe for federal court action.

6. Since we hold here that, even if there was a duty to assign counsel before Reid made his confessions, the use of the confessions did not make the trial fundamentally unfair, we need not decide when

it was that such a duty arose. We do believe, however, that the first of Reid's confessions would have been admissible even if properly objected to, since the duty to assign counsel surely does not arise prior to the time when the accused should be brought before a judicial officer. All that Reid asked was that his wife be present, and she was. His confession was made voluntarily within five minutes of his arrival in Hartford. There has been no claim of coercion or intimidation on January 16 or 17, or at any other time.

to the assistance of counsel.[7] He made no objection and agreed that the confessions be received. Had objection been made, the trial court might have excluded the statements and the testimony of the police officers. Had objection been made, the prosecution might have thought it wiser to present its very strong case without the use of Reid's admissions. Having made no objection, Reid should not now be heard to raise constitutional objections which he did not see fit to urge at the earlier stage. At every trial points are contested and conceded; when they are conceded they must be considered to be binding.

Every defendant must, of course, be accorded a fair trial. But the state is also entitled to a fair trial. When, after an extended hearing, informed and experienced defense counsel has taken a position, and the state, in reliance on it, has tried its case accordingly, it would be unduly tipping the scales of justice against the state to permit a defendant to argue that his conviction must be vacated because his counsel should not have taken the position he did and should not have made the concessions on which the state acted. And when, in addition, the defendant volunteers to take the stand and repeats the details given in his confessions, which were admitted without objection, item for item, as Reid did here, so that the story coming from his own mouth is almost identical to that in the contested confession, we cannot say that his trial was "fundamentally unfair."

In circumstances under which the right to counsel is not "absolute"—i. e., in noncapital cases—denial of access to counsel, or delay in retention or appointment of counsel, may raise constitutional issues only if such denial results in fundamental unfairness at trial. Canizio v. People of State of New York, 1946, 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545;

Gayes v. State of New York, 1947, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962. The same should be true of pretrial failure to assign counsel in a capital case. Such failure should be grounds for vacating a conviction only if counsel is not appointed in time to prevent the error from prejudicing the defendant's case. Here competent counsel was appointed in time; he was fully aware of all that had happened, but he chose not to contest the admissibility of the confessions. He chose to take the position which Reid himself had taken throughout—namely, that Reid had concealed nothing and had frankly told all that he had done. In keeping with this understandable strategy, Reid took the stand and told his story with the hope that if the stark truth regarding his heinous crime were frankly admitted, the jury's resentment might turn to pity for the defendant and life imprisonment would be recommended. Whatever may have been the reasons for the course taken by Reid and his counsel, it was a conscious reasoned choice made by counsel who was experienced in the ways of the criminal law. As such, it amounted to a forfeiture of any right to assert constitutional infirmities in the trial as a result of the admission of the statements. United States ex rel. Jackson v. Brady, 4 Cir., 133 F.2d 476, 481, certiorari denied, 1943, 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702; see Yakus v. United States, 1944, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834; Browning v. Hand, 10 Cir., 1960, 284 F. 2d 346; cf. Segurola v. United States, 1927, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186; United States ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 113, 47 S.Ct. 302, 71 L.Ed. 560. The trial strategy had much to commend it; that it failed does not mean that it was mistaken. In any event, the failure does not entitle Reid to a second chance. Regrettable as hindsight may prove the

---

**7.** The police officers were thoroughly questioned with regard to the proceedings before the Hartford Police Court. Reid's counsel noted several times during cross-examination that no guardian had been appointed at the Police Court and that Reid was held without bail. All the facts regarding Reid's detention and questioning were fully known to his counsel before they consented to the introduction of his statements and the results of his tour with the police.

choice to have been, Reid must be bound by what his lawyers did and his acquiescence in that course by his own testimony. Egan v. Teets, 9 Cir., 1957, 251 F.2d 571, 577; United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, 426, certiorari denied, 1953, Maroney v. United States ex rel. Darcy, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375; Eury v. Huff, 4 Cir., 1944, 141 F.2d 554; see United States v. Bertone, 3 Cir., 1957, 249 F.2d 156, 160; Cruzado v. People of Puerto Rico, 1 Cir., 1954, 210 F.2d 789, 791; United States v. Sorrentino, 3 Cir., 175 F.2d 721, 723, certiorari denied, 1949, 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532; cf. United States v. Liss, 2 Cir., 1939, 105 F.2d 144.

■ If a conviction is based on a confession that has been coerced, a technical flaw in the manner of taking the objection at the trial will not prevent the federal courts from setting aside the conviction. Brown v. State of Mississippi, 1936, 297 U.S. 278, 286–287, 56 S.Ct. 461, 80 L.Ed. 682; Blackburn v. State of Alabama, 1960, 361 U.S. 199, 210, 80 S.Ct. 274, 4 L.Ed.2d 242. The niceties of trial practice are there overcome by the repugnance that courts exhibit towards convictions based to some degree on oppressive and brutal police practices. But in this case it is not freedom from the rack and thumbscrew which is at issue; what is here involved is the right of the state to rely on the decisions made by counsel and the defendant himself. We see no reason to require a state to try a criminal case on the theory that the state may not rely on concessions of counsel and the testimony of the defendant himself. The right to the aid of counsel may be of utmost importance at various stages of a criminal proceeding. But this does not mean that failure to have guidance of counsel at every moment is so abhorrent to judicial sensibilities that regardless of the circumstances any statement made by an accused who does not have a lawyer at his elbow must be excluded even if the accused agrees at the trial that it may be used against him and himself reaffirms all that the state claims when he testifies in his own behalf.

Accordingly, we reverse the judgment of the district court and direct that the writ of habeas corpus be discharged.

The court expresses its gratitude to William D. Graham, Esq., Special Assistant Public Defender to Reid in the state trial, for his devotion to his client's cause and for his able presentation of this appeal, and to Joseph LaPlante for his work on the brief.

Judgment reversed.

CLARK, Circuit Judge (dissenting).

I dissent and vote to affirm the grant of habeas corpus upon the able opinion of Judge Smith below pointing out constitutional infirmities in the state court conviction. D.C.Conn., 197 F.Supp. 125.

PER CURIAM.

Judges LUMBARD, MOORE and FRIENDLY having voted to deny the petition, and Judges CLARK and WATERMAN having voted to grant, and Judge KAUFMAN not participating, the petition for rehearing is denied.

The motion for a stay is granted provided that within thirty days the petitioner-appellee makes application for certiorari to the Supreme Court in accordance with the provisions of Rule 28(c) of the Rules of this Court, 28 U.S.C.A.

CLARK, Circuit Judge (dissenting).

The petition for rehearing shows that the point relied on by the majority to reverse Judge Smith's grant of the habeas corpus writ, namely, waiver of objection by the public defenders assigned as counsel for the accused to the introduction in evidence of the confessions, was neither briefed nor argued to us. It also shows that the accused objected to the counsel and tried to repudiate them and that they in turn sought relief from the assignment, both before and after the trial, because they could not reach any relation of co-operation with him. A holding that counsel assigned an accused may waive him into the electric chair seems in any

event dubious. But when it appears further that there was no co-operation between accused and counsel and that the accused had repudiated the counsel, the conclusion of waiver borders on the fantastic in any human and practical or, indeed, legal sense. F.R.Crim.P. 52(b); United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71, certiorari denied 361 U.S. 838, 850, 80 S.Ct. 58, 4 L.Ed.2d 78.

The majority by implication accept Judge Smith's reasoned view, D.C.Conn., 197 F.Supp. 125, that the petitioner's rights were violated by the long delay in notifying him that he was entitled to counsel. In view of the decisive effect thus given the alleged waiver, the point should be thoroughly argued and briefed, particularly by the State, before we allow this harsh rule of involuntary loss of rights to stand.[1] I would grant the petition for rehearing.

WATERMAN, Circuit Judge (dissenting).

I dissent from the denial of the petition for a rehearing. I would grant it.

Our present opinion, in which I concurred, could well be re-examined in the light of the additional explanatory information we are likely to obtain. There are two puzzling factors in this case concerning which we could well receive enlightenment. One, though it may be clear that the Public Defender's decision to have Reid testify should be unreviewable as planned strategy adopted by him in the hope that thereby the jury might recommend clemency, why weren't the *pre-trial* confessions objected to—if only to save for appellate review the obvious constitutional questions? And, two, inasmuch as no objection was made at trial, why hasn't the State heretofore relied upon this trial waiver—a waiver we have found from our own unassisted survey of the case?

Reid's life is at stake.

[1.] In view of the importance of this issue, I do not reach other problems which must be settled if the conviction is to stand. Hence I pass such matters as the validity of the first confession obtained after the midnight ride to Hartford, or the utility of that confession in any event in view of its conceded falsity. It is unfortunate that so many cases of illegally coerced confessions of a like nature are now appearing in this state, so generally renowned for its fair administration of the law; thus see Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, reversing 2 Cir., 271 F.2d 364; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, reversing State v. Taborsky, 147 Conn. 194, 158 A.2d 239; and the present case. It would seem that legislation setting forth the constitutional rights of the accused would be helpful as directives to the police and prosecutors; and the Governor's veto of the bar supported "Act Concerning the Right of the Accused to Have Counsel," proposed P.A. 1961, No. 585, on the ground that it was not needed, seems less firmly based than his criticism of the ambiguity of the language employed.