ANN KILBRIDE ET AL. *v.* THE DUSHKIN PUBLISHING GROUP, INC., ET AL.

SPEZIALE, C. J., HEALEY, PARSKEY, ARMENTANO and SHEA, JS.

Argued February 10—decision released April 20, 1982

---

*Elizabeth A. Dorsey,* with whom, on the brief, was *Peter A. Kelly,* for the appellants (plaintiffs).

*William H. Prout, Jr.,* for the appellees (named defendant et al.).

SHEA, J. The plaintiffs have appealed from a judgment granting a motion to strike six counts of their eight count complaint, leaving two counts still pending in the trial court. The two plaintiffs are similarly situated and make essentially the same claims against the defendants, negligence, breach of employment contracts, defamation, and interference with contract rights. Accordingly, eight counts were used to set forth the claims of the plaintiffs in separate counts for each of them based upon these four theories of liability.

Since the subject of the appeal is the granting of a motion to strike, the facts giving rise to these claims must be taken from the complaint. Practice Book § 152; *Tomes* v. *Thompson,* 112 Conn. 190, 198, 151 A. 531 (1930). Both plaintiffs were employed as editors of the named defendant (hereinafter D.P.G.), a Delaware corporation with headquarters in Guilford, which publishes books principally for college students. The four individual defendants, David Dushkin, John Beckmann, Richard Connelly and John Quirk, were officers of D.P.G., serving respectively as its president, executive vice-president-treasurer, vice-president and

vice-president for operations. They allegedly constituted the management responsible for daily activities of the corporation.

Both plaintiffs were paid salaries but had no written employment contracts; nor do they claim to have been employed for any definite term. The gravamen of the various counts of the complaint is that Quirk procured the discharge of the plaintiffs by falsely reporting to the other members of the management team that the plaintiffs were incompetent and unsuitable as employees. Quirk is claimed to have been motivated solely by his desire to employ the plaintiffs in his own business, which he was secretly starting in the educational publishing field apparently in competition with his employer. Soon after the plaintiffs were terminated from their employment, the other management members received a report concerning Quirk's skulduggery, but no investigation was made until April, 1977, when his machinations were discovered and he was fired.

The principal issue discussed in the briefs is whether the plaintiffs come within the narrow exception to the general rule that contracts for an indefinite term of employment are terminable at will which was carved out by our decision in *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980). There we held that "the employer may be responsible in damages if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Id., 475. The trial court decided the motion to strike the complaint prior to the release of our opinion in *Sheets* but did con-

sider cases from other jurisdictions following the same doctrine and concluded that the plaintiffs' claims did not measure up to its requirements.

We must first resolve a procedural problem not raised by the parties involving Practice Book § 157, which allows a judgment to be rendered after a motion to strike has been granted and a party has failed to replead only "in those instances where an entire complaint, counterclaim or cross complaint has been stricken . . . ." This disposition left pending in the trial court the defamation counts against Quirk and D.P.G. as well as the breach of contract and tortious interference counts against Quirk. Section 157 does not authorize such a judgment upon the stricken counts of a complaint while the others remain to be adjudicated in the trial court. In *Breen* v. *Phelps,* 186 Conn. 86, 439 A.2d 1066 (1982), we noted that the evident purpose of this restriction was to discourage piecemeal litigation by limiting appeals to situations where all of the claims made by a party have been resolved by the decision upon the motion to strike. Since none of the plaintiffs or defendants objected to the rendition of the "partial judgment" or claimed it as error on appeal, they must be deemed to have waived this procedural flaw and we are not concerned unless it affects our jurisdiction of the appeal. Practice Book §§ 3012 (a), 3060E, 3063; *Salamandra* v. *Kozlowski,* 173 Conn. 136, 139, 376 A.2d 1103 (1977). We must, therefore, consider whether the defect is jurisdictional.

"The general rule at common law was that a writ of error would not lie to bring up a judgment which had not completely disposed of the action." 6 Moore, Federal Practice (2d Ed.) ¶ 54.19; see 46 Am. Jur. 2d, Judgments § 61; *Beauvais* v. *Spring-*

*field Institution for Savings,* 303 Mass. 136, 145–46, 20 N.E.2d 957 (1939). The early rationale for this rule, denominated the "single judicial unit theory," was that each case constituted an indivisible entirety and could not be in the trial court and the appellate court at the same time. *Metcalfe's Case,* 11 Coke 38, 39, 77 Eng. Rep. 1193 (1615). This metaphysical analysis may have had a more practical aspect in ancient times because of difficulties in transmitting files between courts before the advent of modern office technology. 6 Moore, Federal Practice (2d Ed.) ¶ 54.19. The single judicial unit theory of the common law was followed in the federal courts where it was applied to bar appeals from decisions upon separate claims[1] until all of the issues involved in the litigation had been decided. *Collins* v. *Miller,* 252 U.S. 364, 370, 40 S. Ct. 347, 64 L. Ed. 616 (1920); *Holcombe* v. *McKusick,* 61 U.S. 552, 554, 15 L. Ed. 1020 (1857); *United States* v. *Girault,* 52 U.S. 22, 31–32, 13 L. Ed. 587 (1850); *Sheppy* v. *Stevens,* 200 F. 946 (2d Cir. 1912). Only such a complete disposition was deemed to constitute a final judgment upon which the jurisdiction of an appellate court depended. 6 Moore, Federal Practice (2d Ed.) R 54. The

---

[1] In the federal courts a distinction was eventually made between multiple claims and multiple parties. Where there were multiple claims all of them must have been adjudicated before an appeal could be taken. *Collins* v. *Miller,* 252 U.S. 364, 40 S. Ct. 347, 64 L. Ed. 616 (1920); *Sheppy* v. *Stevens,* 200 F. 946 (2d Cir. 1912). Where multiple parties were involved a judgment lacked finality where it terminated the action as to fewer than all the parties where the claim or liability asserted was joint. *Hohorst* v. *Hamburg-American Packet Co.,* 148 U.S. 262, 13 S. Ct. 590, 37 L. Ed. 443 (1893). Where jointness did not exist, however, an order concluding the suit as a distinct matter in respect to one of several parties was regarded as a final judgment with respect to that party. *Republic of China* v. *American Express Co.,* 190 F.2d 334, 335–36 (2d Cir. 1951).

adoption of the federal rules in 1938 modified the common-law doctrine to the extent of providing that a judgment disposing of "a particular claim and all counterclaims" related thereto would be treated as final even though other claims remained in the trial court for further adjudication. 6 Moore, Federal Practice (2d Ed.) ¶ 54.20. Presently the federal rules allow judgments resolving issues in respect to separate claims or parties to be certified as final for the purpose of appeal by the trial judge if he concludes that "there is no just reason for delay." Fed. R. Civ. Proc. § 54(b) (1938).

In this state the common-law rule requiring a full disposition of the suit in the trial court before an appeal could be taken was also followed in actions at law. *Magill* v. *Lyman,* 6 Conn. 59, 61 (1825). "A judgment, to be final, must put an end to the suit." *Treadway* v. *Coe,* 21 Conn. 283, 284 (1851). In equitable proceedings a different rule prevailed allowing the appeal of certain adjudications deemed to be separable from the main action. *Guarantee Trust & Safe Deposit Co.* v. *Philadelphia, Reading & New England R. Co.,* 69 Conn. 709, 714, 38 A. 792 (1897). Where only an award of monetary damages was sought, as in the case before us, the only partial judgments given recognition as final were those disposing of the suit with respect to one party while the action remained in the trial court for disposition of the claims involving other parties. *Bunnell* v. *Berlin Iron Bridge Co.,* 66 Conn. 24, 37, 33 A. 533 (1895). A similar distinction in multiple party cases where the claim of liability asserted was not joint was made in the federal courts prior to the adoption of their procedural rule.[2]

---

[2] See footnote 1, supra.

It may be contended that the judgment upon the first count of the complaint claiming negligence against the three officers, Dushkin, Beckmann and Connelly, as well as against their employer, D.P.G., as joint tortfeasors would qualify under our practice as final for the purpose of an appeal with respect to those three individuals, who are not named in the other counts. Where the subject of an appeal is the granting of a motion to strike, however, our rules of practice make no provision for rendering judgment upon less than an entire complaint even though the claims remaining to be adjudicated in the trial court do not involve all of the defendants. Practice Book § 157. We cannot read into § 157 any exception for situations where the partial judgment rendered is fully dispositive insofar as some of the parties are concerned. With reference to the federal practice analogy, we note that the modification of the final judgment rule with respect to multiple claims achieved by the adoption of federal rule 54(b) in 1938 was not extended to multiple parties until 1961 when an amendment was adopted for that purpose. 6 Moore, Federal Practice (2d Ed.) ¶ 54.27(3).

Since the function of Practice Book § 157 is to allow the striking of an "entire complaint, counterclaim or cross complaint" to be appealable as a final judgment, the judgment rendered by the trial court in this action upon fewer than all counts of the complaint, being unauthorized by that rule, cannot be accorded such status. The jurisdiction of this court, is, of course, limited to appeals taken from final judgments. General Statutes § 52-263; Practice Book § 3000. The failure of the judgment before us to conform to the rule of practice is, therefore, a jurisdictional defect which precludes

our consideration of the merits of the appeal until the two counts of the complaint still pending in the trial court have been resolved. Accordingly, the appeal must be dismissed.

The appeal is dismissed.

In this opinion the other judges concurred.